# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

                          :

UNITED STATES OF AMERICA          :       <u>INDICTMENT</u>

                          :

       - v. -             :      15 Cr.

                          :

DEAN SKELOS and
ADAM SKELOS,

                          :

          Defendants.  :

- - - - - - - - - - - - - - - - x

JUDGE WOOD

15 CRIM 317

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 2 8 2015

      The Grand Jury charges:

## Background

### DEAN SKELOS and His Official Powers in the New York State Senate

    1.   Since his election in 1984, DEAN SKELOS, the defendant, has represented a portion of Nassau County as a Member of the New York State Senate (the "Senate"), which, along with the Assembly, constitutes the New York State Legislature (the "Legislature"). Additionally, DEAN SKELOS was Majority Leader and/or Co-Majority Coalition Leader, as well as President Pro Tem, of the Senate from at least in or about January 2011 until on or about May 11, 2015.

    2.   As the Majority Leader and President Pro Tem of the Senate, DEAN SKELOS, the defendant, exercised significant power, including but not limited to, appointing the chairpersons of all Senate committees, determining who was listed as the sponsors of legislation, and controlling if and when legislation was brought to the floor for vote. DEAN SKELOS also represented the Senate

in negotiations with the Governor of the State of New York and the
Speaker of the New York State Assembly concerning the budget of
the State of New York (the "State") and other critical legislative
and other matters pending before the State, including tax
abatement and rent regulation legislation important to the real
estate industry.  In his official capacity DEAN SKELOS also
exercised significant power with respect to Nassau County through
his involvement in securing legislation important to the
governance of Nassau County and the funding of its operations.

### ADAM SKELOS and His Business Interests

3.   ADAM SKELOS, the defendant, is the adult son of
DEAN SKELOS, the defendant.  At all times relevant to this
Indictment, ADAM SKELOS has relied on both direct financial
support from his father and indirect support through his father's
official position, including (a) more than $100,000 from DEAN
SKELOS directly and (b) several hundred thousand dollars paid to
ADAM SKELOS in the form of sales commissions, consulting fees, and
salary from campaign donors to DEAN SKELOS and/or companies with
business before the State.

### Developer-1 and CW-1

4.   "Developer-1" is a large real estate development
firm that, through various corporate affiliates, builds, owns, and
manages residential rental properties across the New York City

metropolitan area.  Developer-1's business model depends in
substantial part on favorable tax abatements and rent regulations
subject to periodic renewal by the Legislature.  Accordingly,
Developer-1 is one of the largest contributors to candidates for
State office and political action committees controlled by leaders
of the Legislature, including defendant DEAN SKELOS.

5.    "CW-1" has been employed by Developer-1 as a senior
executive since in or about 2001.  Among other responsibilities,
CW-1 is involved in managing Developer-1's political operations,
including Developer-1's political relationship with DEAN SKELOS,
the defendant.  DEAN SKELOS has directed CW-1 to make hundreds of
thousands of dollars in campaign contributions through various
limited liability companies, or "LLCs," controlled by
Developer-1.

### The Environmental Technology Company

6.    The "Environmental Technology Company" is based in
Arizona and is owned by a holding company (the "Holding Company"),
which has been publicly traded since at least in or about January
2013.  The Environmental Technology Company's principal
proprietary technology has been a water filter that it sells in
various states including New York that purportedly removes various
microbial pollutants from water, which can be used to treat

polluted stormwater run-off and water contaminated by hydraulic fracturing.

## The Conspiracy to Commit Extortion and Honest Services Fraud

7.     From at least in or about 2010 up to and including in or about April 2015, DEAN SKELOS and ADAM SKELOS, the defendants, engaged in a corrupt scheme to monetize DEAN SKELOS's official position to obtain for ADAM SKELOS hundreds of thousands of dollars in bribes, gratuities, and extortion payments from campaign donors to DEAN SKELOS and/or companies with business before the State.   DEAN SKELOS and ADAM SKELOS referred implicitly and explicitly to DEAN SKELOS's power to reward and punish through official action in inducing campaign donors to DEAN SKELOS and/or companies with business before the State to provide commissioned sales work or employment to ADAM SKELOS.   Through these efforts, DEAN SKELOS attempted to secure and did secure hundreds of thousands of dollars for ADAM SKELOS, including but not limited to the following:

a.     Title insurance commissions from major real estate developers with legislative business before DEAN SKELOS.

b.     Over $100,000 in payments and health benefits from a medical malpractice insurer who provided ADAM SKELOS with a no-show job while actively lobbying DEAN SKELOS on legislative matters.

4

c.   A $20,000 payment arranged by Developer-1, as well as Developer-1's assistance in obtaining for ADAM SKELOS payments of $10,000 per month from the Environmental Technology Company, as described in more detail below.

### The Scheme To Obtain Funds From Developer-1

8.   Beginning at least in or about 2010, DEAN SKELOS, the defendant, used the power and influence of his official position to obtain and attempt to obtain income for ADAM SKELOS, the defendant, from real estate developers with substantial legislative interests before the State, including Developer-1. DEAN SKELOS and ADAM SKELOS obtained these benefits from Developer-1, directly and through the Environmental Technology Company, by fostering the expectation that DEAN SKELOS would take official action favorable to and would refrain from taking official action to the detriment of Developer-1 and the Environmental Technology Company in return for such payments. Thereafter, DEAN SKELOS did in fact take official action favorable to Developer-1 and the Environmental Technology Company to reward them for the payments to ADAM SKELOS and to attempt to ensure that such payments would continue.

#### *DEAN SKELOS's Illegal Demands to Developer-1 to Make Payments to ADAM SKELOS*

9.   In or about late 2010 and early 2011, during a period in which Developer-1 actively was lobbying defendant DEAN

SKELOS for real estate legislation critical to Developer-1's business, DEAN SKELOS repeatedly solicited representatives of Developer-1 to direct money to ADAM SKELOS, the defendant, including during meetings in which Developer-1 was lobbying DEAN SKELOS on real estate legislation.  For example:

a.   On or about December 20, 2010, DEAN SKELOS met with the founder of Developer-1 (the "Developer-1 Founder"), CW-1, and a lobbyist for Developer-1 (the "Developer-1 Lobbyist"). During the meeting, DEAN SKELOS discussed the fact that he would be working with Developer-1 to negotiate certain legislation renewals sought by Developer-1 during the upcoming session.  Both during this meeting and while leaving the meeting, DEAN SKELOS directly asked the Developer-1 Founder and CW-1 to send Developer-1's title insurance business to ADAM SKELOS in order for him to receive cash commissions.

b.   On or about February 17, 2011, CW-1 and the Developer-1 Lobbyist met with ADAM SKELOS at CW-1's apartment building in New York, New York, to discuss Developer-1 sending ADAM SKELOS title insurance commissions and other business, as DEAN SKELOS had requested.

c.   On or about March 18, 2011, CW-1 and the Developer-1 Founder attended a real estate industry group meeting with DEAN SKELOS in New York, New York.  During the meeting,

members of the real estate industry group and DEAN SKELOS discussed the upcoming legislative review of rent regulation and real estate tax benefits important to Developer-1 and the industry.  After the meeting ended, DEAN SKELOS thanked CW-1 for meeting with ADAM SKELOS and renewed his request that Developer-1 direct commissions to ADAM SKELOS.

          d.    On or about May 5, 2011, DEAN SKELOS met with CW-1 and the Developer-1 Lobbyist at CW-1's apartment building. During this meeting, the Developer-1 Lobbyist explained to DEAN SKELOS Developer-1's views about the real estate laws that were up for renewal in the Legislature.  At the meeting, DEAN SKELOS again thanked CW-1 for meeting with ADAM SKELOS and reiterated his request that Developer-1 give ADAM SKELOS business because ADAM SKELOS was purportedly suffering financially.

          10.   During the time period relevant to this Indictment, DEAN SKELOS, the defendant, stated to CW-1 and others that he would take detrimental action against real estate developers who did not support him by, among other things, making contributions to his campaign fund.

### Developer-1's Payments to ADAM SKELOS in Response to the Demands of DEAN SKELOS

          11.   As a result of defendant DEAN SKELOS's repeated requests and his threat regarding real estate developers who did not support him, CW-1, acting on behalf of Developer-1, arranged

for defendant ADAM SKELOS to receive payments totaling almost
$220,000 from two sources: a one-time $20,000 payment from
Developer-1 and a recurring monthly payment – initially $4,000
and then increasing to $10,000 – from the Environmental Technology
Company, in which Developer-1's founding family and CW-1 had
financial investments and, as a result, substantial influence.

     12.   In or around November 2012, after a period of
negotiation led by CW-1 with defendant DEAN SKELOS's awareness,
the Environmental Technology Company retained defendant ADAM
SKELOS as a government relations consultant at a rate of $4,000
per month (plus the potential for millions of dollars in
performance-based commissions).  Shortly thereafter, following
a threat from DEAN SKELOS and ADAM SKELOS to block a potential
contract between the Environmental Technology Company and Nassau
County if ADAM SKELOS did not receive a substantial raise, the
Environmental Technology Company increased its payments to ADAM
SKELOS to $10,000 per month.  In total, from in or about November
2012 to in or about April 2015, ADAM SKELOS was paid approximately
$200,000 by the Environmental Technology Company.

     13.   The Environmental Technology Company made these
payments with the expectation, based on statements by DEAN SKELOS
and ADAM SKELOS, the defendants, as well as CW-1 on behalf of the
defendants, that DEAN SKELOS would use his official position to

benefit the Environmental Technology Company in return for these payments, and would use his official position to harm the Environmental Technology Company's interests if payments at the desired amount were not made to ADAM SKELOS.

14.   In addition to causing the Environmental Technology Company to hire and pay ADAM SKELOS, the defendant, CW-1 also arranged for ADAM SKELOS to receive a payment of $20,000 in February 2013 as a result of further pressure by DEAN SKELOS, the defendant, on Developer-1 to provide immediate financial assistance to ADAM SKELOS pending negotiations over the terms of ADAM SKELOS's contract with the Environmental Technology Company. In particular, CW-1 contacted an executive ("Title Executive-1") at a title insurance company that was dependent on Developer-1 for business ("Title Company-1") and instructed Title Executive-1 to provide a $20,000 payment to ADAM SKELOS in a manner that was not traceable to Developer-1.  ADAM SKELOS did not refer any business or perform any work for Title Company-1 or Developer-1 in connection with this $20,000 payment.

*Official Actions Taken by DEAN SKELOS in Return for the Payments to ADAM SKELOS and to Ensure Payments Would Continue*

15.   From in or about 2010 through in or about 2015, in exchange for the illegal payments to defendant ADAM SKELOS and to ensure they would continue, defendant DEAN SKELOS used his official position to take numerous actions as the opportunities

arose under the color of his official authority and in his official capacity as an elected legislator and as Co-Majority Coalition Leader, Majority Leader and President Pro Tem of the Senate, including but not limited to the following:

a.    DEAN SKELOS, in his official capacity, met with representatives of Developer-1 and discussed legislative matters of importance to Developer-1.

b.    DEAN SKELOS supported legislative proposals favorable to Developer-1, including but not limited to proposals made by lobbyists for Developer-1 with respect to the Rent Act of 2011.

c.    DEAN SKELOS promoted and voted for various real estate legislation sought by and favorable to Developer-1, including legislation concerning rent regulation and property tax abatements, and he rebuffed legislative initiatives put forth by interests adverse to Developer-1.

d.    DEAN SKELOS facilitated the approval by Nassau County of a $12 million contract with the Environmental Technology Company (the "Nassau County Contract").

e.    DEAN SKELOS pressured Nassau County officials (i) to obtain additional funding so that work on the Nassau County Contract could progress, and (ii) to make payments to the Environmental Technology Company so that the Company would

10

continue making monthly payments to ADAM SKELOS.

        f.   DEAN SKELOS assisted the Environmental Technology Company in its ultimately unsuccessful attempt to secure the issuance of hydraulic fracturing regulations by the New York State Department of Health sought by the Environmental Technology Company, including by directing members of his Senate staff to arrange a meeting between the Environmental Technology Company and the Department of Health.

        g.   DEAN SKELOS attempted to secure changes to New York State's 2015-2016 budget to include additional funding for stormwater infrastructure projects and changes to New York State Law that would have authorized so-called "design-build" contracts, which would have benefitted the Environmental Technology Company and ADAM SKELOS.

        16.   In furtherance of the scheme, DEAN SKELOS and ADAM SKELOS, the defendants, and others caused interstate wires to be used, including but not limited to interstate e-mails, telephone calls, and wire transfers of funds.

### The Defendants' Concealment of Their Criminal Conduct

        17.   As part of their corrupt scheme and to avoid detection by the public, State regulators, law enforcement, and others, DEAN SKELOS and ADAM SKELOS, the defendants, took numerous

steps to conceal their illegal conduct, including but not limited to the following:

    a.    CW-1 and ADAM SKELOS disguised a $20,000 payment to ADAM SKELOS as a commission for title insurance work from Title Company-1 in order to falsely make it appear that the payment was in return for work by ADAM SKELOS and so that the payment could not be traced back to Developer-1.

    b.    ADAM SKELOS did not register as a lobbyist as required under New York State law even though he lobbied New York State and county officials, including DEAN SKELOS, on behalf of the Environmental Technology Company.

    c.    When discussing the scheme, DEAN SKELOS and ADAM SKELOS used coded language and, in the case of ADAM SKELOS, used a self-described "burner" phone, in an attempt to limit possible electronic surveillance by law enforcement.

    18.    DEAN SKELOS and ADAM SKELOS, the defendants, increased their acts of concealment, including by changing their behavior and the manner in which they communicated, following the federal criminal charges brought against the Speaker of the New York Assembly on January 22, 2015, and the subsequent public focus on corruption investigations.

## Statutory Allegations

### COUNT ONE

**(Conspiracy to Commit Extortion Under Color of Official Right)**

19.   The allegations contained in paragraphs 1 through 18 of this Indictment are repeated and realleged as if fully set forth herein.

20.   From at least in or about 2010 through in or about April 2015, in the Southern District of New York and elsewhere, DEAN SKELOS and ADAM SKELOS, the defendants, and others known and unknown, willfully and knowingly did conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1951.

21.   It was a part and an object of the conspiracy that DEAN SKELOS and ADAM SKELOS, the defendants, and others known and unknown, willfully and knowingly, would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion as that term is defined in Title 18, United States Code, Section 1951, to wit, DEAN SKELOS, ADAM SKELOS, and others known and unknown, would and did arrange and attempt to arrange for DEAN SKELOS to cause entities with business before New York State to direct payments to ADAM SKELOS with the expectation

13

that DEAN SKELOS would use his official position on their behalf and would not take official actions adverse to their interests.

(Title 18, United States Code, Section 1951.)

## COUNT TWO

### (Conspiracy to Commit Honest Services Fraud)

The Grand Jury further charges:

22. The allegations contained in paragraphs 1 through 18 of this Indictment are repeated and realleged as if fully set forth herein.

23. From at least in or about 2010, up to and including in or about April 2015, in the Southern District of New York and elsewhere, DEAN SKELOS and ADAM SKELOS, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

24. It was a part and an object of the conspiracy that DEAN SKELOS and ADAM SKELOS, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its intangible right to DEAN SKELOS's honest services as an elected legislator, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds

14

for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, DEAN SKELOS, while serving as Majority Leader, Co-Majority Coalition Leader, and President Pro Tem of the New York State Senate would take official action in return for payments to his son, ADAM SKELOS, and in connection therewith and in furtherance thereof, DEAN SKELOS and ADAM SKELOS transmitted and caused to be transmitted interstate electronic wire transfers of funds, e-mails and telephone calls.

(Title 18, United States Code, Section 1349.)

### COUNT THREE

**(Extortion Under Color of Official Right: Developer-1)**

The Grand Jury further charges:

25.    The allegations contained in paragraphs 1 through 18 of this Indictment are repeated and realleged as if fully set forth herein.

26.    From at least in or about 2010 through in or about April 2015, in the Southern District of New York and elsewhere, DEAN SKELOS, the defendant, while serving as an elected legislator and as Majority Leader, Co-Majority Coalition Leader and President Pro Tem of the New York State Senate, together with ADAM SKELOS, the defendant, willfully and knowingly, attempted to and did obstruct, delay, and affect commerce and the movement of articles

and commodities in commerce by extortion as that term is defined in Title 18, United States Code, Section 1951(b)(2), to wit, DEAN SKELOS, aided and abetted by ADAM SKELOS, attempted to use and did use DEAN SKELOS's official position to cause a real estate developer with business before New York State to make and direct payments to ADAM SKELOS through extortion under color of official right.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT FOUR

### (Extortion Under Color of Official Right: The Environmental Technology Company)

The Grand Jury further charges:

27.   The allegations contained in paragraphs 1 through 18 of this Indictment are repeated and realleged as if fully set forth herein.

28.   From at least in or about 2010 through in or about April 2015, in the Southern District of New York and elsewhere, DEAN SKELOS, the defendant, while serving as an elected legislator and as Majority Leader, Co-Majority Coalition Leader, and President Pro Tem of the New York State Senate, together with ADAM SKELOS, the defendant, willfully and knowingly, attempted to and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion as that term is defined in Title 18, United States Code, Section 1951(b)(2), to

16

wit, DEAN SKELOS, aided and abetted by ADAM SKELOS, attempted to use and did use DEAN SKELOS's official position to cause an environmental technology company with business before New York State to make payments to ADAM SKELOS through extortion under color of official right.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT FIVE

### (Solicitation of Bribes and Gratuities – Developer-1)

The Grand Jury further charges:

29.  The allegations contained in paragraphs 1 through 18 of this Indictment are repeated and realleged as if fully set forth herein.

30.  From at least in or about 2010, up to and including in or about April 2015, in the Southern District of New York and elsewhere, DEAN SKELOS, the defendant, being an agent of a State and local government, to wit, a Member of the New York State Senate, and defendant ADAM SKELOS, as an aider and abetter of DEAN SKELOS, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of such government and agency involving a thing of value of $5,000 and more, while such government and agency was in receipt of, in any

one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, to wit, DEAN SKELOS, in his capacity as a Member of the New York State Senate, and ADAM SKELOS, as an aider and abetter, solicited and accepted cash and things of value from a real estate developer with business before New York State intending for DEAN SKELOS to be influenced and rewarded.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT SIX

### (Solicitation of Bribes and Gratuities – The Environmental Technology Company)

The Grand Jury further charges:

31.   The allegations contained in paragraphs 1 through 18 of this Indictment are repeated and realleged as if fully set forth herein.

32.   From at least in or about 2010, up to and including in or about April 2015, in the Southern District of New York and elsewhere, DEAN SKELOS, the defendant, being an agent of a State and local government, to wit, a Member of the New York State Senate, and defendant ADAM SKELOS, as an aider and abetter of DEAN SKELOS, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a

18

business, transaction, and series of transactions of such government and agency involving a thing of value of $5,000 and more, while such government and agency was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, to wit, DEAN SKELOS, in his capacity as a Member of the New York State Senate, and ADAM SKELOS, as an aider and abetter, solicited and accepted cash and things of value from an environmental technology company with business before New York State intending for DEAN SKELOS to be influenced and rewarded.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## FORFEITURE ALLEGATIONS: COUNTS ONE THROUGH SIX

33.   As a result of committing one or more of the offenses alleged in Counts One through Six of the Indictment, DEAN SKELOS and ADAM SKELOS, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the offenses alleged in Counts One through Six, including but not limited to any and all right, title, and interest in:

a.    Any and all funds, up to and including $192,000, in account number 2994573919 at JPMorgan Chase in the name of ADAM SKELOS and his spouse;

b.    Any and all funds, up to and including $107,581.06, in account number 970779211 at JPMorgan Chase in the name of Adam Skelos and his spouse;

c.    the real property known and described as all that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 29 Leon Court, Rockville Centre, New York, NY 11570.

### Substitute Asset Provision

34.   If any of the above-described forfeitable property, as a result of any act or omission of DEAN SKELOS and ADAM SKELOS, the defendants:

(1)   cannot be located upon the exercise of due diligence;

(2)   has been transferred or sold to, or deposited with, a third person;

(3)   has been placed beyond the jurisdiction of the Court;

(4)   has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

> (Title 18, United States Code, Section 981,
> Title 21, United States Code, Section 853, and
> Title 28, United States Code, Section 2461.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

21

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

DEAN SKELOS and
ADAM SKELOS,

Defendants.

INDICTMENT

15 Cr.

(18 U.S.C. §§ 666, 1343, 1346,
1349, 1951, & 2.)

_____
Foreperson.

PREET BHARARA
United States Attorney.

A True Bill.

5/28/15 - Filed Indictment.
dc   Case assigned to Judg Wood
Judy Francis
US/MJ