UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,
                                                            :          15 CR 317 (KMW)
          - against -
                                                            :          **OPINION & ORDER**
DEAN SKELOS AND ADAM SKELOS
                                                            :
                              Defendants.
                                                            :
------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

          The Government charged Dean Skelos and Adam Skelos (collectively, "Defendants")

with extortion in violation of 18 U.S.C. §§ 1951-52, and with soliciting and accepting bribes and

gratuities in violation of 18 U.S.C. § 666(a). Defendants have filed the following pre-trial

motions:

          (1) a motion to dismiss Counts Four and Seven of the Superseding Indictment;

          (2) a motion to suppress evidence derived from wiretap interceptions of their cellular phones;

          (3) a motion for a hearing pursuant to Federal Rule of Criminal Procedure 6(e); and

          (4) a motion for a bill of particulars.

For the reasons set forth below, the Court DENIES Defendants' motions.

**I.      MOTION TO DISMISS COUNTS FOUR AND SEVEN OF THE
          SUPERSEDING INDICTMENT**

          Defendants move to dismiss Counts Four and Seven of the Superseding Indictment on the

ground that these Counts are insufficient as a matter of law. Defendants argue that these Counts

fail to allege that Dean Skelos took "official action" in exchange for payments to his son.  (Mem.

of Law. in Supp. Defs.' Mot. to Dismiss, 10-13 [Dkt. No. 21]). Defendants' arguments fail

because the actions alleged by the Government fall within "official action" as courts have

consistently interpreted the laws governing extortion and solicitation and acceptance of bribes and gratuities. For these reasons, which are set forth more fully below, the Court DENIES Defendants' motion to dismiss.

A.  *Legal Standard*

An indictment in a criminal case must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The sufficiency of an indictment is assessed according to two primary criteria: first, whether it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend"; and second, whether it "enables [the defendant] to plead an acquittal or conviction" with enough detail to establish whether the defendant may plead double jeopardy in subsequent proceedings based on the same or a similar events. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also Russell v. United States*, 369 U.S. 749, 763-64 (1962); *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001); *United States v. Pirro*, 212 F.3d 86, 91-92 (2d Cir. 2000).

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *De La Pava*, 268 F.3d at 165 (citing *United States v. Nai Fook Li*, 206 F.3d 56, 62 (1st Cir. 2000) (en banc), *cert. denied*, 531 U.S. 956 (2000)). The Second Circuit has previously described dismissal of an indictment as "the most drastic remedy available" and an "extreme sanction," *United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978), and has noted that dismissals have been upheld "only in very limited and extreme circumstances," and should be "reserved for the truly extreme cases," "especially where serious criminal conduct is involved." *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979).

In reviewing a motion to dismiss an indictment, the Court must take the allegations of the indictment as true. *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952); *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004).

The sufficiency of the evidence is not a matter properly considered on a pretrial motion to dismiss the indictment unless the government has made a full proffer of the evidence it intends to present at trail. *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998). "Thus, a defendant may not challenge an indictment on the ground that it is not supported by adequate or competent evidence." *United States v. Bodmer*, 342 F. Supp. 2d 176, 180 (S.D.N.Y. 2004) (Scheindlin, J.) (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)).

B. *Discussion*

1. Extortion and Bribery Charges

Count Four of the Superseding Indictment charges Defendants with substantive extortion under color of official right in violation of the Hobbs Act, 18 U.S.C. § 1951, based on their actions to benefit an Arizona-based environmental technology company (the "Environmental Technology Company") as well as their subsequent threats to take actions harmful to the company. (Superseding Indictment ¶¶ 38-39 [Dkt. No. 18]). 18 U.S.C. § 1951(a) prohibits any conduct that "obstructs, delays, or affects commerce" by means of extortion, as well as penalizing anyone who "attempts or conspires so to do." The statute in turn defines "extortion" to mean "the obtaining of property from another, with his consent . . . under color of official right." 18 U.S.C. § 1951(b)(2).

Count Seven of the Superseding Indictment charges Defendants with solicitation and acceptance of bribes and gratuities in violation of 18 U.S.C. § 666(a)(1)(B), again based on their interactions with the Environmental Technology Company. (Superseding Indictment ¶¶ 44-45

[Dkt. No. 18]). This statute provides criminal penalties for any person who is an agent of a state receiving annual benefits greater than $10,000 through a federal program and who "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization [or] government." *Id.*

In a prosecution under either of these statutes, the public official whose influence is sought does not necessarily need to be the recipient of any financial benefits. Rather, such illegal payments may be made to third parties. *United States v. Green*, 350 U.S. 415, 420 (1956) (extortion under 18 U.S.C. § 1951 does not depend upon having a direct benefit conferred upon the person who has obtained the property by virtue of his/her position as a public official); *United States v. DeMizio*, 741 F.3d 373, 382 (2d Cir. 2014) (bribery schemes encompass payments made to family, friends, or other loyal third parties); 18 U.S.C. § 666(a)(1)(B) (barring the solicitation of anything of value "for the benefit of *any person*" (emphasis added)).

    a.  <u>Official Action</u>

Under either of the above statutes, extortion or bribery occurs when an unlawful payment is made in exchange for "official action." The parties disagree about the scope of activities encompassed by "official action" in the context of a legislator like Senator Skelos. Both parties agree that legislative actions—drafting, enacting, or blocking legislation—constitute official action. But the parties disagree about whether activities outside the formal legislative process— such as arranging or attending meetings, speaking to third-parties on behalf of a constituent, or exerting influence gained by virtue of one's official position—constitute official action. Defendants argue that these latter activities fall outside the scope of "official action," *see* (Mem. of Law. in Supp. Defs.' Mot. to Dismiss, 10-13 [Dkt. No. 21]), whereas the Government argues

that they fall within it, (Government's Mem. of Law in Opp'n to Defs.' Pretrial Mots., 24-26 [Dkt. No. 27]).

The official acts necessary to sustain a charge of extortion or bribery "include[] any act taken 'under color of official authority.'" *United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013) (quoting *United States v. Ganim*, 510 F.3d 134, 142 n.4 (2d Cir. 2007)). Importantly, this extends beyond actions that are prescribed by statutes, regulations, or written rules, and encompasses those "duties not completely defined by written rules [but] clearly established by settled practice." *United States v. Birdsall*, 233 U.S. 223, 231 (1914).

Applying the holding of *Birdsall* to the context of a legislator, courts have found that "official acts" include not only legislative actions, but also actions taken outside the formal legislative process. *See United States v. Brewster*, 408 U.S. 501, 524 (1972) ("[M]any non-legislative activities are an established and accepted part of the role of a Member [of the U.S. Congress]."). Specifically, the Second Circuit rejected the "suggestion that a congressman's only official acts . . . are acts in the legislative process itself," calling such a notion "untenable," and noting that courts have consistently read the bribery statutes "sufficiently broadly to encompass all of the acts normally thought to constitute a congressman's legitimate use of his office." *United States v. Biaggi*, 853 F.2d 89, 97 (2d Cir. 1988).

In prior decisions, courts interpreting "official acts" in the context of bribery and extortion have held that "official acts" encompasses such conduct as: the exertion of influence by a congressional aide with other agencies, *United States v. Carson*, 464 F. 2d 424, 433-34 (2d Cir. 1972), *cert. denied*, 409 U.S. 949 (1972); the invocation of an official's position or of congressional interest in interceding on behalf of a constituent with a third party, *Biaggi*, 853 F.2d at 97-98; and taking steps to promote and ensure the success of a business venture,

including corresponding with officials and investors who might be helpful, scheduling and conducting meetings, and seeking to secure contracts on behalf of the business, *United States v. Jefferson*, 674 F.3d 332, 356 (4th Cir. 2012), *as amended* (Mar. 29, 2012). In these decisions, courts have frequently looked to the surrounding circumstances or "the manner in which [the defendant] went about" his or her tasks to determine whether or not a particular act was official. *See, e.g.*, *Biaggi*, 853 F.2d at 98 (determining that correspondence constituted an official act when letters were written on the defendant's official stationery and were signed in his role as chairman of a congressional committee). In addition, the Fourth Circuit has held that "mere steps in furtherance of a final act or decision may constitute an official act." *United States v. McDonnell*, 792 F.3d 478, 510 (4th Cir. 2015) (citing *Jefferson*, 674 F.3d at 357). [1]

These decisions demonstrate that Defendants are incorrect in asserting that Counts Four and Seven of the Superseding Indictment are insufficient as a matter of law. (Mem. in Supp. Mot. to Dismiss, 10-13 [Dkt. No. 21]). The Superseding Indictment alleges that Senator Skelos exerted influence with Nassau County officials to obtain funding for particular projects of benefit to the Environmental Technology Company, directed members of his staff to arrange meetings between the Environmental Technology Company and the Department of Health, and facilitated the approval of a lucrative public contract with the Environmental Technology Company. (Superseding Indictment ¶ 27(d)-(g)). These actions parallel the types of conduct that courts have

---

[1] Defendants urge the Court to embrace a narrow reading of "official acts," relying on *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 409 (1999). However, subsequent decisions have made clear that *Sun-Diamond* does *not* undermine or overrule the central holding of *Birdsall* that "official acts" extend beyond purely legislative functions to encompass those activities generally thought to be part of a legislator's legitimate use of his office. *See Jefferson*, 674 F.3d at 355 (holding that *Sun-Diamond* does not overrule *Birdsall* on the scope of "official acts" under the bribery statute); *McDonnell*, 792 F.3d at 508 (rejecting the argument that under *Sun-Diamond*, actions that fall within the scope of official acts under *Birdsall*, such as speaking with aides and arranging meetings, cannot constitute official acts); *United States v. Alfisi*, 308 F.3d 144, 151 n.4 (2d Cir. 2002) ("We do not agree that *Sun-Diamond* requires us to define the crime of bribery narrowly"). To the extent that Defendants suggest *Sun-Diamond* narrows the scope of "official acts" beyond the holding of *Birdsall*, they are incorrect.

previously held to constitute official action. *See Carson*, 464 F. 2d at 433-34 (exerting influence created by virtue of official position); *Biaggi*, 853 F.2d at 97-98 (invoking official position and congressional interest); *Jefferson*, 674 F.3d at 356 (scheduling meetings and securing contracts on behalf of a business).

Defendants also assert that an official act in the context of a Hobbs Act or § 666 prosecution must include a "decision or action on any question, matter, cause, suit, proceeding or controversy." (Mem. of Law to Dismiss, 11 [Dkt. No. 21] (citing *Biaggi*, 853 F.2d at 96-97)). *Biaggi* was a prosecution brought under 18 U.S.C. § 201, and the language Defendants quote comes from the statutory definition of "official acts" that applies to such prosecutions, outlined in § 201(a)(3). However, the Second Circuit in *Ganim* declined to apply this statutory definition of "official acts" to Hobbs Act and § 666 cases. *See* 510 F.3d at 141 n.4. Indeed, Defendants concede as much in their Reply. (Reply Mem. of Law in Supp. Defs.' Mot. to Dismiss, 8 [Dkt. No. 36]). Although the quoted language may provide guidance as to what *does* constitute official action, it may not be imported as a new requirement into the Hobbs Act context to categorically exclude conduct that does not fall within its terms. Thus, Defendants are incorrect in their assertion that the Government must allege official action that involved a "decision or action on any question, matter, cause, suit, proceeding or controversy."

Defendants' arguments fail for the additional reason that both the Hobbs Act and § 666 apply even where an official action is not ever carried out. *See* (Mem. of Law in Opp'n, 29 [Dkt. No. 33]) (citing *Ganim*, 510 F.3d at 142-43). The criminal conduct penalized by these statutes is the acceptance of payment in return for an agreement to perform a specific official act, i.e. a quid pro quo, with either the intent to carry out the act in question (bribery under § 666) or the knowledge that the party making the payment reasonably believed the recipient could engage in

official action to help bring about an end sought (extortion under § 1951). *See McDonnell*, 792 F.3d at 510-12 (citing cases). "The consummation of an official act is not an element of the offense." *Id.* at 510; *see also Rosen*, 716 F.3d at 700 (citing *United States v. Coyne*, 4 F.3d 100, 114 (2d Cir. 1993)) (holding that bribery statutes criminalize schemes in which payment is made for acts even if the opportunity to take the acts has not arisen); *Ganim*, 510 F.3d at 143 (quoting *United States v. Evans*, 504 U.S. 255, 268 (1992)) ("[T]he offense [of extortion] is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the quid pro quo is not an element of the offense.").

Pursuant to this standard, the Superseding Indictment does not need to allege that official actions were completed, so long as it alleges that Dean Skelos agreed to perform official acts in exchange for payments to his son. The Superseding Indictment does so, alleging, *inter alia*, that Dean Skelos threatened to block legislation unless the Environmental Technology Company increased its payments to his son, Adam Skelos. (Superseding Indictment ¶¶ 14-15 [Dkt. No. 18]). As the Government points out, such a threat to block legislation falls within even the narrow definition of "official action" that Defendants embrace. *See* (Mem. of Law in Opp'n, 31 [Dkt. No. 33]).

Thus, taking the facts alleged in the Superseding Indictment as true, the Court concludes that Counts Four and Seven are legally sufficient and therefore the Defendants' motion to dismiss these counts is DENIED.

Defendants' request for an in camera examination of the grand jury transcripts is also DENIED. Given that the Court rejects Defendants' interpretation of "official acts," there is no need for review of the transcript to determine whether members of the grand jury were instructed on the law in the way that Defendants have requested.

## II.        MOTION TO SUPPRESS EVIDENCE

Next, Defendants move to suppress any evidence gathered as a result of a series of orders authorizing the interception of communications over three target cellphones, beginning with an initial application on December 4, 2014 with surveillance extending through April of 2015.  *See* (Mem. of Law in Supp. Defs.' Mot. to Suppress, 1 [Dkt. No. 20]). Defendants acknowledge that "the standard for suppression of a wiretap is quite high," *id.*, but argue that such a step is warranted on the grounds that (1) the information supporting the Initial Wiretap Application was "stale," and (2) the Government failed to show that a wiretap was necessary by first exhausting less intrusive investigative techniques such as physical surveillance or securing a cooperating witness. *Id.* The Court concludes that the information at issue was sufficiently current to support a finding of probable cause that there was ongoing criminal activity, and that there was ample evidence that alternate methods of investigation had been tried and failed or reasonably appeared unlikely to succeed. For these reasons, set forth more fully below, the Defendants' motion to suppress is DENIED.

### A.  *Legal Standard*

Applications for a wiretap are governed by 18 U.S.C. § 2518(3), which provides that a wiretap may not be authorized unless the issuing judge determines, based on the application as a whole, that there is probable cause to believe that (1) "an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516"; (2) "particular communications concerning that offense will be obtained through such interception;" and (3) "the facilities from which . . . [the] communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense." Probable cause must exist at the time of issuance. *United States v. Martino*, 664 F.2d 860, 866 (2d Cir. 1981),

*cert. denied*, 458 U.S. 1110 (1982). Probable cause requires only a "fair probability" of finding evidence of criminal activity in the particular place sought. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In reviewing a motion to suppress evidence obtained through a wiretap, the issuing court's findings are granted "considerable deference." *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009); *see also Gates*, 462 U.S. at 236-37 ("reaffirming" that reviewing courts are entitled to "great deference" with regard to determinations of probable cause); *United States v. Ambrosio*, 898 F. Supp. 177, 181 (S.D.N.Y. 1995) (Chin, J.) ("[S]ubstantial deference must be accorded to [an issuing judge's] finding of probable cause."). There is a "presumption of validity" for wiretaps that have issued, *Ambrosio*, 898 F. Supp. at 181, and review is limited to whether the judge who issued the order had a "substantial basis" for finding probable cause, *Gates*, 462 U.S. at 236; *see also Concepcion*, 579 F.3d at 217 (quoting *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997)) (the reviewing court must ensure only that "the facts set forth in the application were minimally adequate to support the determination that was made"). The burden of proving that probable cause was lacking rests with the defendant. *United States v. Magaddino*, 496 F.2d 455, 459-60 (2d Cir. 1974).

B.   *Discussion*

1.   <u>Staleness of the Evidence in Support of the Application</u>

Defendants contend that there was not probable cause at the time the first wiretap order was issued because the evidence offered in support of the Initial Wiretap Application was "premised almost entirely on 'old facts.'" (Mem. of Law to Suppress, 7 [Dkt. No. 20]). "In assessing whether or not the supporting facts have become stale," a court should consider the "age of those facts" as well as the "nature of the conduct alleged." *United States v. Gallo*, 863

10

F.2d 185, 192 (2d Cir. 1988), *cert. denied*, 489 U.S. 1083 (1989); *Martino*, 664 F.2d at 867.

Where there are allegations of "continuing conduct or [] ongoing activity, as contrasted with

isolated instances of illegal acts, the passage of time between the last described act and the

presentation of the application becomes less significant." *Martino*, 664 F.2d at 867. The Second

Circuit has previously upheld the issuance of a wiretap when there was a gap of approximately

18 months between the time when the supporting statements were obtained and the application

was submitted, determining that the information was not stale given the continuous nature of the

alleged criminal activities. *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990).

Defendants argue that the crucial information supporting the Government's wiretap

application concerned events that had allegedly taken place more than a year earlier: Adam

Skelos's employment with the Environmental Technology Company, which began in late 2012;

the payment of $20,000 to Adam Skelos in 2013; and the alleged April 2013 threat by

Defendants to cease efforts to secure the approval of a contract that would benefit the

Environmental Technology Company. *See* (Mem. of Law to Suppress, 7 [Dkt. No. 20]).

Defendants contend that the only current information offered at the time of the Initial Wiretap

Application in December of 2014 consisted of (1) emails regarding Adam Skelos's work for the

Environmental Technology Company, which demonstrated only the "performance of his widely

known and well-documented duties," and (2) records of phone calls Adam Skelos made to his

father and a cooperating witness ("CW-2"), his co-worker, which Defendants argue are

"unsurprising" and "meaningless for purposes of a probable cause finding." *Id.* at 8.

The Government argues that the affidavit offered in support of the Initial Wiretap

Application established a "fair probability" that Adam Skelos was involved in an ongoing

scheme of exactly the sort described in *Martino. See* (Mem. of Law in Opp'n, 49 [Dkt. No. 27]).

The Government also contends that the more recent incidents detailed in the affidavit were in fact relevant and provided support for a finding of probable cause that Adam Skelos was engaged in continuing criminal activity. *See id.*

Defendants' arguments fail to overcome the high level of deference owed to the probable cause determinations of the judge who issued the initial wiretap. The affidavit submitted in support of the application contained sufficient, and sufficiently current, information for Judge Gardephe to have a substantial basis for finding probable cause that there was ongoing criminal activity. *See Gates*, 462 U.S. at 236. In particular, the affidavit alleges: (1) that Dean Skelos took steps to advance the Environmental Technology Company's business interests on numerous occasions between 2012 and 2014, the most recent of which occurred as late as October 31, 2014, barely a month before the Government submitted its application; (2) during this same period Adam Skelos made numerous phone calls to CW-2, who the Government alleges was involved in the scheme; and (3) Adam Skelos continued to receive allegedly extortionate payments from the Company during this time frame. *See* (Mem. of Law in Opp'n, 49-52 [Dkt. No. 27]).

Taken together and reviewed with the appropriate level of deference, these facts provide a substantial basis for Judge Gardephe's probable cause determination.

2. <u>Necessity for the Wiretap</u>

Defendants also allege that the Government failed to demonstrate the necessity for the wiretaps in its initial application. Under 18 U.S.C. § 2518(3)(c), a wiretap application may be approved only upon a showing by the government that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." However, the necessity showing does *not* require the Government to exhaust all

other possible means of investigating its target(s) before a wiretap order may be issued. *United States v. Young*, 822 F.2d 1234, 1237 (2d Cir. 1987) (citing *United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983)). "The purpose of these 'other investigative techniques' requirements is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977) (citations omitted); *see also United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974) ("[The requirement] is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.").

Defendants argue that the Government had no need for a wiretap because its surveillance of Adam Skelos' email had already yielded "hundreds" of relevant communications between the target subjects. (Mem. of Law to Suppress, 10 [Dkt. No. 24]). Defendants contend that the emails the Government had gathered "clearly were sufficient on their own" and that "these electronic communications are no different than calls." *Id.* Defendants also contend that the Government "rejected without justification" alternative techniques for investigation, in particular securing a cooperating witness, suggesting that the Government's success in obtaining a cooperating witness after the issuance of the wiretap order demonstrates that the Government could and should have sought his assistance before resorting a wiretap. *Id.* at 12-13.

As with a probable cause determination, the issuing court's finding of necessity is entitled to substantial deference by a reviewing court. *See United States v. Wagner*, 989 F.2d 69, 71 (2d Cir. 1993). Given this standard, Defendants fail to carry their burden of showing that Judge Gardephe's necessity determination lacked substantial basis. On the contrary, as the Government details in its motion, the affidavit submitted in support of the wiretap application provided ample

evidence to conclude that alternate methods of investigation had been tried and failed or reasonably appeared unlikely to succeed. *See* (Mem. of Law in Opp'n, 54-64 [Dkt. No. 27]).

Defendants contend that the emails already intercepted were "no different than phone calls"; however the fact that Defendants engaged in a pattern of conduct where calls immediately followed the sending of emails suffices to show why it was reasonable for Judge Gardephe to conclude that this investigation needed to intercept phone communications. *Id.* at 46, 58-59, 61. The affidavit submitted by Agent Fish made a sufficient showing for Judge Gardephe to conclude that other methods of surveillance—such as physical surveillance or approaching a potential cooperating witness—reasonably appeared unlikely to succeed based on the nature of the alleged scheme and the existing close relationships among the parties involved. And as the Government argues, the fact that a witness agreed to cooperate *after* an authorized wiretap generated evidence of his culpability does not demonstrate that the same witness would have been willing to cooperate *before* such evidence was obtained. *Id.* at 63. Accordingly, Judge Gardephe had a substantial basis to determine that a wiretap was necessary.[2]

---

[2] The Government argues in the alternative that, even if Judge Gardephe's order approving the wiretap were held to be invalid, Defendants are not entitled to suppression of the resulting evidence because the Government relied on the order in good faith. (Mem. of Law in Opp'n, 64 [Dkt. No. 27]). The Government contends that the *Leon* rule—namely that evidence should not be suppressed if it was obtained in good faith reliance on a search warrant, *United States v. Leon*, 468 U.S. 897, 922 (1984)—applies equally in the context of motions to suppress evidence obtained under an invalid wiretap order. (Mem. of Law in Opp'n, 65 [Dkt. No. 27]). Courts in numerous other circuits have so held. *See, e.g.*, *United States v. Brewer*, 204 F. App'x 205, 208 (4th Cir. 2006); *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994); *United States v. Malekzadeh*, 855 F.2d 1492, 1497 (11th Cir. 1988). *But see United States v. Rice*, 478 F.3d 704, 712-14 (6th Cir. 2007). The Second Circuit has not ruled on this issue, although previous decisions of this Court have extended *Leon* to the context of wiretaps. *See, e.g.*, *United States v. Tomero*, 462 F. Supp. 2d 565, 572 (S.D.N.Y. 2006) (Kaplan, J.); *United States v. Gotti*, 42 F. Supp. 2d 252, 267 (S.D.N.Y. 1999) (Parker, J.); *Ambrosio*, 898 F. Supp. at 187. Additionally, the Second Circuit has held that statutory exclusionary provisions governing wiretap evidence do not preclude the application of other recognized exceptions to the Fourth Amendment Exclusionary rule. *See United States v. Bianco*, 998 F.2d 1112, 1126 (2d Cir. 1993) (holding that the ruling of *Franks v. Delaware* applies to wiretaps) *abrogated on other grounds by Groh v. Ramirez*, 540 U.S. 551 (2004).

This Court finds persuasive the decisions concluding that *Leon* properly applies in the context of wiretaps. Evidence obtained from a wiretap issued without probable cause but which the government has relied on in good faith will not be suppressed unless "(1) the issuing judge abandoned his detached, neutral role; (2) the agent was dishonest or reckless in preparing the supporting affidavit for the wiretap order; or (3) the [Government]'s reliance on the [wiretap] was not reasonable." *United States v. Bellomo*, 954 F. Supp. 630, 638 (S.D.N.Y. 1997) (Kaplan, J.).

In conclusion, the Defendants have failed to meet their burden of demonstrating that Judge Gardephe lacked probable cause to support the issuance of the wiretap order. Accordingly, their motion to suppress the evidence derived therefrom is DENIED.

## III.    MOTION FOR A RULE 6(e) HEARING

Defendants move for discovery followed by a hearing to determine whether and to what extent the Government may have violated Federal Rule of Criminal Procedure 6(e). Defendants argue that three news articles and a letter from a reporter, which appeared between January and May of 2015, contained "leaked grand jury information" that could have come only from the Government. (Mem. of Law in Supp. Defs.' Mot. for a Rule 6(e) Hr'g, 1 [Dkt. No. 22]). Defendants have failed to make a prima facie showing that the information they cite reflected a breach of grand jury secrecy or that the information was divulged by a Government agent or employee. For these reasons, discussed more fully below, Defendants' Motion for a Rule 6(e) Hearing is DENIED.

### A.  Legal Standard

Federal Rule of Criminal Procedure 6(e)(2) bars the disclosure of any "matter occurring before a grand jury" by one of several enumerated parties, including, in particular, "an attorney for the government." Fed. R. Crim. P. 6(e)(2)(B)(iv). If the defendant believes that there has been an improper disclosure in violation of Rule 6(e)(2), s/he must first make a *prima facie* showing that (1) there has been disclosure of a matter or matters occurring before the grand jury; and (2) that the source of the disclosure was an attorney or agent of the government. *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989); *see also United States v. Rioux*, 97 F.3d 648, 662 (2d Cir. 1996). This showing is typically made by submitting copies of news reports

---

There is no evidence at this time to suggest that any of these conditions is met; accordingly, the Government would be entitled to a good faith exception even if Judge Gardephe's initial order had been issued without probable cause.

that incorporate and reveal the allegedly impermissible disclosures. *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1067 (D.C. Cir. 1998). Once the defendant has made a *prima facie* showing, the burden then shifts to the Government to rebut the defendant's case in a show cause hearing. *Barry*, 865 F.2d at 1321.[3]

B.  *Discussion*

1.  Matters Occurring Before the Grand Jury

Rule 6(e) does not define what constitutes a "matter occurring before the grand jury," but numerous decisions have interpreted this phrase. At its core, Rule 6(e)(2) protects from disclosure evidence that is actually presented to the grand jury. *See United States v. Eastern Air Lines Inc.*, 923 F.2d 241, 244 (2d Cir. 1991); *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999) ("Information actually presented to the jury is core Rule 6(e) material that is afforded the broadest protection from disclosure."). Protection also extends beyond the literal evidence that is presented to include "anything that may tend to reveal what transpired before [the grand jury], such as summaries of grand jury testimony." *Eastern Air Lines*, 923 F.2d at 244; *see also In re Grand Jury Subpoena*, 920 F.2d 235, 241 (4th Cir. 1990); *In re Grand Jury Investigation*, 610 F.2d 202, 216-17 (5th Cir. 1980).

However, this protection is limited by the general purpose of Rule 6(e), *In re Sealed Case No. 99-3091*, 192 F.3d at 1002, which seeks to ensure grand jury secrecy in order to preserve the integrity of the proceedings, *see Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-19 (1979). "[T]he rule protects only 'the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process.'" *United States v. Rosen*,

---

[3] Some courts structure this analysis slightly differently, although the substance of the inquiry is substantially the same. *See, e.g.*, *Rioux*, 97 F.3d at 662 (treating the government's rebuttal evidence as the third factor a court should consider in determining whether a defendant has established a *prima facie* case).

471 F. Supp. 2d 651, 654 (E.D. Va. 2007) (quoting *In re Grand Jury Subpoena*, 920 F.2d at 241). Thus Rule 6(e) provisions governing disclosure of "matters before the grand jury" are intended to protect against those disclosure that would "reveal some 'secret aspect of the inner workings of the grand jury.'" *Id.* (quoting *United States v. Dynavac*, 6 F.3d 1407, 1413 (9th Cir. 1993)).

In practice, courts, including the Second Circuit, have consistently interpreted this to mean that Rule 6(e) does not apply to disclosures of information obtained independently of the grand jury process, even if the same information might later be presented to the grand jury. *See, e.g.*, *In re Grand Jury Subpoena*, 103 F.3d 234, 238-39 (2d Cir. 1996) (citing cases holding that information produced for purposes independent of grand jury proceedings is not subject to Rule 6(e)). This includes "information [] produced by a criminal investigation that parallels but is independent of a grand jury investigation." *Id.* at 238; *see also In re Sealed Case No. 99-3091*, 192 F.2d at 1002 (citing *Rioux*, 97 F.3d at 662) ("It is therefore necessary to differentiate between statements by a prosecutor's office with respect to its own investigation and statements by a prosecutor's office with respect to a *grand jury's* investigation, a distinction of the utmost significance."); *In re Grand Jury Subpoena*, 920 F.2d at 242 ("[I]nformation produced by criminal investigations paralleling grand jury investigation does not constitute matters 'occurring before the grand jury' if the parallel investigation was truly independent of the grand jury proceedings."). Rule 6(e) does not require "that a veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury." *Securities & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc).

The determination of whether something is a matter occurring before a grand jury for purposes of applying Rule 6(e) is a "fact-specific inquiry." *In re Grand Jury Subpoena*, 103 F.3d

17

at 239. Past decisions indicate that disclosures about the following might constitute Rule 6(e) violations: revelations of the identity of either grand jurors or expected witnesses; information about expected testimony of witnesses or likely questions; information that reveals the strategy or direction of a grand jury investigation (distinct from any outside investigations); or the date when a grand jury will return an indictment. *Rosen*, 471 F. Supp. 2d at 655 (citing cases).

Here, Defendants have failed to make a *prima facie* showing that the information contained in the news reports on January 29, 2015; April 15, 2015; and May 4, 2015, and in a letter from a reporter on April 2, 2015 constituted "matters occurring before a grand jury." Defendants allege that these reports "reflected a knowledge of grand jury material," and contained "extensive details regarding [the] grand jury investigation." *See* (Mem. of Law for 6(e) Hr'g, 7-15 [Dkt. No. 22]). However, the details in the reports cited by Defendants do not clearly pertain to the "secret aspect of the inner workings of the grand jury." *Rosen*, 471 F. Supp. at 654. During this same time, the Government was conducting its own investigation outside the grand jury, based on materials obtained through wiretaps, search warrants, and interviews with witnesses not expected to appear before the grand jury. (Mem. of Law in Opp., 85 [Dkt. No. 27]). "[I]nformation [] produced by a criminal investigation that parallels but is independent of a grand jury investigation" is not subject to Rule 6(e) provisions on disclosure. *In re Grand Jury Subpoena*, 103 F.3d at 238. Since the disclosures cited by Defendants refer to information that could have been discovered in the course of either investigation and do not pertain specifically to the workings of the grand jury itself, Defendants have failed to demonstrate that there was a violation of grand jury secrecy.

The information in the article appearing on May 4, as Defendants themselves state, pertained to a draft version of the criminal complaint being prepared by the Government. (Mem.

18

of Law for 6(e) Hr'g, 12-14 [Dkt. No. 22]). Although such information should not have been

made public, as the Government acknowledges, (Mem. of Law in Opp'n, 85 [Dkt. No. 27]), it is

not a matter occurring before a grand jury and therefore its disclosure cannot form the basis of a

Rule 6(e) violation.

        2.   Disclosure by the Government

In addition to showing that the disclosure involved "matters occurring before a grand

jury," defendants must also make a *prima facie* showing that the disclosure was made by an

attorney or agent for the government. *Barry*, 865 F.2d at 1321. Typically courts will determine

this by looking at the information contained in the articles or news reports presented in support

of the motion. In certain circumstances, the article need not expressly implicate the government,

if the nature of the information disclosed therein makes clear the connection. *Id.* at 1325 (citing

*In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 218 (5th Cir. 1980)).

Defendants contend that the articles and letter described in their motion contain

information that could only have come from government sources. For instance, Defendants state

that the questions from a *New York Times* reporter to Adam Skelos "looked like a government

discovery request and closely tracked the ultimate charges in the case," and "remarkably

presage[d] the government's theory that was being presented to the grand jury," and a

subsequent email sent to Dean Skelos "reflected a knowledge of grand jury material, and . . . a

detailed knowledge of the prosecution theory." (Mem. of Law for 6(e) Hr'g, 11-12 [Dkt. No.

22]). Similarly, a *New York Times* article published on April 15 contained some facts, although

Defendants do not specify which facts, that Defendants argue "could only come from

government sources." *Id.* at 12.

Defendants have failed to demonstrate that the Government was the source of any of these alleged disclosures. First, none of the news articles or the letter indicates that a government attorney or agent was the source of the information, and at least one explicitly states that the U.S. Attorney's Office and FBI representatives declined to comment. *E.g.*, (Gage Aff. Ex. F. [Dkt. No. 25]); *see also* (Mem. of Law in Opp'n, 78 [Dkt. No. 27]). The Government has also submitted an affidavit signed by all government attorneys "in charge of this prosecution and who attended the grand jury presentations, as well as case investigating agents and investigators" affirming that none of them spoke to any member of the press about information relating to the investigation. (Martins Aff. [Dkt. No. 27]); *see Rioux*, 97 F.3d at 662 (noting that the government's rebuttal evidence should be considered as part of evaluating whether defendant has made a *prima facie* case).

Additionally, the scope and nature of this case undermines the assumption that information included in the articles could only have come from the Government. In the months leading up to the grand jury, the Government issued subpoenas to more than 100 individuals and entities, interviewed approximately 20 individuals in connection with the investigation, and had been in conversation with legal counsel representing many of those parties. (Mem. of Law in Opp'n, 81 [Dkt. No. 27]). There were thus hundreds of individuals not covered by Rule 6(e) who would have had information about the existence and aspects of the investigation, and who could have provided this information to members of the press.

In light of these circumstances, and given the "fact-sensitive" nature of a Rule 6(e) inquiry, the Court concludes that Defendants have failed to make a *prima facie* showing of a Rule 6(e) violation and therefore are not entitled to discovery or a hearing on this issue. Accordingly their motion is DENIED.

3.   Lack of Prejudice

The Court has already decided that the Defendants have not made the requisite showing that there were leaks from the grand jury or that any purported leaks came from the Government. Therefore it is not necessary to consider whether Defendants have suffered prejudice from any of the alleged disclosures.

## IV.   MOTION FOR A BILL OF PARTICULARS

Last, Defendants move for a bill of particulars setting forth: (1) how Dean Skelos "promoted, "supported," "attempted to secure," and "assisted" legislation, (Bill of Particulars, Gage Aff. Ex. O, ¶¶ 1-7 [Dkt. No. 25]); (2) how Dean Skelos "facilitated," "pressured," and "further pressured" various individuals regarding a contract and payments regarding Nassau County, (Bill of Particulars, ¶¶ 8-10 [Dkt. No. 25]); (3) specific statements that constituted "threats," that "fostered the expectation" of favorable action, or that indicated Dean Skelos would take "detrimental action," (Bill of Particulars, ¶¶ 11-13 [Dkt. No. 25]); (4) co-conspirators and specific wires and mails involved in the scheme, (Bill of Particulars, ¶¶ 14-15 [Dkt. No. 25]); and (5) the basis for allegations of false statements as well as all instances when a person the Government intends to call as a witness has deleted emails or destroyed evidence, (Bill of Particulars, ¶¶ 16-17 [Dkt. No. 25]) as well as any exculpatory *Brady* material.

In view of the comprehensiveness and the methodical organization of the production to Defendants, the Court concludes that Defendants already possess all the information to which they are entitled. For these reasons, discussed more fully below, the Defendants' motion for a bill of particulars is DENIED.

*A.  Legal Standard*

"The court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). The decision to do so is within "the sound discretion of the district court." *United States v. Davidoff*, 845 F.2d 1151, 1154-44 (2d Cir. 1988). An accused is entitled to a bill of particulars when necessary: (1) "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial"; (2) "to prevent surprise"; and (3) to allow the defendant "to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010).

A bill of particulars is not intended to be a general investigative tool. *See Torres*, 901 F.2d at 235 ("[The] acquisition of evidentiary detail is not the function of the bill of particulars."); *United States v. Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985) (Edelstein, J.) ("It is not enough that the information [sought] would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case."); *United States v. Guerrerio*, 670 F. Supp. 1215, 1224-25 (S.D.N.Y. 1987) (Edelstein, J.) ("A bill of particulars . . . is not a discovery tool and is not intended to allow defendants a preview of the evidence of the theory of the government's case."). For instance, a defendant is not entitled to disclosure of the manner in which the government will attempt to prove the charge, the precise manner in which the government will allege the defendant committed the crimes charged, or a preview of the government's evidence or legal

theories. *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (McMahon, J.)

(collecting cases).

    *B.   Discussion*

    Defendants allege that, despite the voluminous materials provided to them by the

Government, "nonetheless, many of the most critical aspects of the charges remain unclear";

"[t]he Superseding Indictment, though lengthy, fails to present a clear picture of [] crucial facts

[relating to various acts of public corruption by Dean Skelos] choosing instead to rely upon

ambiguous terms" while "[t]he factual underpinning of these terms is largely left unexplained."

(Mem. of Law in Supp. Defendants' Mot. for a Bill of Particulars, 1, 3-4 [Dkt. No. 23]).

    Voluminous production, on its own, is not enough to preclude the need for a bill of

particulars in all circumstances. *See United States v. Ghavami*, No 10-cr-1217, 2012 WL

2878126, at *2 (S.D.N.Y. July 13, 2012) (Wood, J.) (quoting *Bortnovsky*, 820 F.2d at 575)

("[T]he government does not fulfill its obligation merely by providing mountains of documents

to defense counsel who [a]re left unguided as to the nature of the charges.") *aff'd sub nom.*

*United States v. Heinz*, 790 F.3d 365 (2d Cir. 2015). However, the Government here has done

more than merely produce "mountains of documents"; instead, the Government has provided the

information in an organized and comprehensible fashion. *See United States v. Ferguson*, 478 F.

Supp. 2d 220, 227 (D. Conn. 2007) (holding that a bill of particulars was not required when the

government had provided detailed allegations and well-organized discovery). For example, the

Government has provided linesheets to accompany the wiretap recordings, including draft

summaries and categorizations of intercepted calls; searchable folders of emails organized by

their relevance and their subject matter; summaries of certain witness statements; lists of co-

conspirators that it intends to produce at trial; and cover letters and indexes categorizing all the material. (Mem. of Law in Opp'n, 92-93 [Dkt. No. 27]).

Finally, with respect to Defendants' request for *Brady* material, the Government understands its obligations, has complied with those obligations to date, and has pledged that it will continue to do so. (Response to Bill of Particulars, Gage Aff. Ex. P, 3 [Dkt. No.25]).

In light of both the comprehensiveness and the methodical organization of the production to Defendants, the Court agrees with the Government that Defendants "are already in possession of the information to which they are entitled." *Id.* at 93. Therefore, the Court DENIES Defendants' motion for a bill of particulars.

## V.      CONCLUSION

For the foregoing reasons, Defendants' pretrial motions are denied. This Opinion and Order resolves Docket entry 20.

SO ORDERED.

DATED:      New York, New York
            October 20, 2015

_____
KIMBA M. WOOD
United States District Judge