UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

       - v. -

Dean Skelos and Adam Skelos,

          Defendants.

S1 15 Cr. 317 (KMW)

**DEFENDANTS' MOTION TO CONTINUE BAIL
AND STAY FINANCIAL PENALTIES PENDING APPEAL**

Alexandra A.E. Shapiro
Shapiro Arato LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
(212) 257-4880

G. Robert Gage, Jr.
Joseph B. Evans
Gage Spencer & Fleming LLP
410 Park Avenue, Suite 900
New York, New York 10022
(212) 768-4900

*Attorneys for Dean Skelos*

Christopher P. Conniff
Ropes & Gray LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9000

*Attorneys for Adam Skelos*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 2

    I.    The Appeal Presents A Substantial Question Under *McDonnell* ....................................... 3

        A.    The "Official Acts" Instruction ................................................................. 3

        B.    The Supreme Court Invalidated A Nearly Identical "Official Acts"
            Instruction In *McDonnell* ....................................................................... 5

    II.    The *McDonnell* Error Is Likely To Result In At Least A New Trial .................................. 9

    III.    The Court Should Stay The Financial Penalties Pending Appeal .................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*McDonnell v. United States,*
No. 15-474, 2016 WL 3461561 (U.S. June 27, 2016) ...................................................... *passim*

*Neder v. United States,*
527 U.S. 1 (1999) ............................................................................................................... 12

*Skilling v. United States,*
561 U.S. 358 (2010) ............................................................................................... 3, 8, 12, 13

*United States v. Abuhamra,*
389 F.3d 309 (2d Cir. 2004) ................................................................................................ 2

*United States v. Banki,*
685 F.3d 99 (2d Cir. 2012) ................................................................................................ 14

*United States v. Bestway Disposal Corp.,*
724 F. Supp. 62 (W.D.N.Y. 1988) ...................................................................................... 15

*United States v. Biaggi,*
853 F.2d 89 (2d Cir. 1988) .................................................................................................. 4

*United States v. Botti,*
711 F.3d 299 (2d Cir. 2013) .............................................................................................. 13

*United States v. Bruno,*
661 F.3d 733 (2d Cir. 2011) .............................................................................................. 13

*United States v. Carson,*
464 F.2d 424 (2d Cir. 1972) ................................................................................................ 4

*United States v. Coluccio,*
No. 87-cr-077, 1993 WL 217133 (E.D.N.Y. June 15, 1993) ................................................ 15

*United States v. Ferguson,*
676 F.3d 260 (2d Cir. 2011) .............................................................................................. 14

*United States v. Ganim,*
510 F.3d 134 (2d Cir. 2007) ............................................................................................. 3, 4

*United States v. Garcia,*
992 F.2d 409 (2d Cir. 1993) .............................................................................................. 14

*United States v. Giancola*,
   754 F.2d 898 (11th Cir. 1985) .................................................................. 2

*United States v. Hornsby*,
   666 F.3d 296 (4th Cir. 2012) ................................................................... 13

*United States v. Jefferson*,
   674 F.3d 332 (4th Cir. 2012) ..................................................................... 4

*United States v. Joseph*,
   542 F.3d 13 (2d Cir. 2008) ...................................................................... 14

*United States v. Keifer*,
   No. 2:08-cr-162, 2012 WL 3878194 (S.D. Ohio Sept. 6, 2012) ............ 15

*United States v. Koestner*,
   No. 4:08-cr-00093, 2010 WL 2595300 (S.D. Iowa June 22, 2010) ........ 15

*United States v. Mahaffy*,
   693 F.3d 113 (2d Cir. 2012) .................................................................... 13

*United States v. McDonnell*,
   792 F.3d 478 (4th Cir. 2015) ................................................................. 4, 6

*United States v. Ngari*,
   559 F. App'x 259 (5th Cir. 2014) ........................................................... 15

*United States v. Post*,
   950 F. Supp. 2d 519 (S.D.N.Y. 2013) ................................................... 13

*United States v. Quinones*,
   No. 06-cr-845(S-2)(FB), 2009 WL 4249588 (E.D.N.Y. Nov. 25, 2009) ........................ 15, 16

*United States v. Randell*,
   761 F.2d 122 (2d Cir. 1985) ..................................................................... 2

*United States v. Reed*,
   756 F.3d 184 (2d Cir. 2014) .................................................................... 13

*United States v. Rosen*,
   716 F.3d 691 (2d Cir. 2013) ...................................................................... 4

*United States v. Skelos*,
   2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ......................................... 4, 8

*United States v. Walker*,
   No. 07-cr-50097-01, 2008 WL 4808837 (W.D. La. Oct. 31, 2008) ......... 15

*United States v. Wright,*
665 F.3d 560 (3d Cir. 2012) ................................................................ 13

*Yates v. United States,*
354 U.S. 298 (1957) ........................................................................... 12

**Statutes and Rules**

18 U.S.C. § 201(a)(3) ................................................................ 6, 7, 8, 9

18 U.S.C. § 666(a)(1)(B) .................................................................... 4

18 U.S.C. § 1343 ............................................................................... 3

18 U.S.C. § 1346 ............................................................................... 3

18 U.S.C. § 1349 ............................................................................... 3

18 U.S.C. § 1951(b)(2) ...................................................................... 3

18 U.S.C. § 3143(b)(1) ................................................................... 1, 2

18 U.S.C. § 3572(g) ..................................................................... 14, 17

26 U.S.C. § 457(a)(1) ...................................................................... 16

Fed. R. Crim. P. 32.2(d) ............................................................... 1, 15

Fed. R. Crim. P. 32.2 advisory committee's note, 2000 Adoption ............... 15

Fed. R. Crim. P. 38(c) ................................................................. 1, 14

Defendants Dean and Adam Skelos respectfully move to continue their bail pending appeal pursuant to 18 U.S.C. §3143(b)(1), and to stay the fine and forfeiture orders pending appeal pursuant to Federal Rules of Criminal Procedure 38(c) and 32.2(d).

## **INTRODUCTION**

This is a paradigm case for bail. It is undisputed that Dean and Adam Skelos pose no risk of flight or danger to the community. They are therefore entitled to bail if their appeals raise a "substantial" question that could lead to reversal or a new trial. That standard is plainly satisfied here because of a change in the controlling law—an intervening Supreme Court decision which establishes that a key jury instruction was legally invalid.

The principal issue on appeal relates to the jury instruction defining "official act" for purposes of all of the charges against the Skeloses. That instruction was modelled in part on the district court's charge in *McDonnell v. United States*, No. 15-474, 2016 WL 3461561 (U.S. June 27, 2016). It construed "official act" very broadly, and permitted the jury to convict based solely on Dean Skelos's meetings with lobbyists from various companies that employed his son, or the meetings he arranged with other public officials. The government took full advantage of this broad instruction in its closing arguments. As to each of the three alleged corruption schemes, the prosecution invited the jury to convict solely for conduct such as "meeting with lobbyists," "setting up meetings" with government officials, and "calling the county."

Although this instruction may have passed muster under Second Circuit precedent controlling at the time of trial, it cannot survive the Supreme Court's unanimous decision in *McDonnell*. The Court there held that an "official act" instruction which was nearly identical to (and if anything, narrower than) the one at the Skelos trial was legally flawed and fatally overbroad. The Court also vacated Governor McDonnell's conviction even though it was possible that the jury convicted him based on a valid legal theory of "official acts," because it

was also "possible," given the flawed instruction, that the jury convicted him "for conduct that is not unlawful." 2016 WL 3461561, at *20-21. The same is true here: even if the jury could have convicted based on legally valid official acts, that is not enough to save the convictions. The jury easily could have convicted based upon acts that were not illegal; indeed, the government invited it to do so. Accordingly, the *McDonnell* issue here is plainly—at a bare minimum—"close" and therefore "substantial," warranting bail pending appeal.

## ARGUMENT

A defendant is entitled to bail pending appeal if he is not likely to flee or pose a danger to public safety, and the appeal "raises a substantial question of law or fact likely to result in reversal [or] an order for a new trial." 18 U.S.C. § 3143(b)(1)(B). As the Skeloses do not present a risk of flight or danger to the community (Dean Skelos PSR at 38; Adam Skelos PSR at 39), the sole issue for the Court is whether his appeal presents a "substantial question." If so, bail is "not simply discretionary but mandatory." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004); *see also* 18 U.S.C. § 3143(b)(1) (providing that court "shall order" bail pending appeal if statutory conditions are met).

A substantial question is one that, *if* resolved in the defendant's favor, would result in reversal or a new trial. *See United States v. Randell*, 761 F.2d 122, 124-25 (2d Cir. 1985). This Court need not find that it erred, or that reversal is the most likely outcome on appeal. *See id.* A question is "substantial" so long as it is "one of more substance than would be necessary to a finding that it was not frivolous"—in other words, "a 'close' question or one that very well could be decided the other way." *Id.* at 125 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)).

That standard is easily satisfied here.

## I.    The Appeal Presents A Substantial Question Under *McDonnell*[1]

A critical issue on appeal relates to the jury instruction defining "official act"—an essential element of each of the offenses.  The Supreme Court has now definitively ruled in *McDonnell* that a very similar, and if anything narrower, jury instruction defining "official acts" was legally erroneous because it allowed the jury to convict based on conduct that is not criminal.  The instruction at the Skeloses' trial was plainly invalid under *McDonnell*, and this legal error raises, at a minimum, a substantial question about the validity of their convictions.

### A.    The "Official Acts" Instruction

The Superseding Indictment charged Dean and Adam Skelos with conspiracy to commit extortion under color of official right (Count 1) and conspiracy to commit honest-services fraud (Count 2).  Dean Skelos was also charged with extortion under color of official right (Counts 3-5) and solicitation of bribes or gratuities (Counts 6-8), and Adam Skelos was charged with aiding and abetting or causing these offenses.

Each of these charges required the government to prove the performance or commitment to perform "official acts" of some sort.  For extortion "under color of official right" (Counts 1, 3-5), the defendant must accept payment (or agree to do so for the conspiracy charge) knowing that the payment is made in exchange for official acts.  *See* 18 U.S.C. § 1951(b)(2) (the "Hobbs Act"); *United States v. Ganim*, 510 F.3d 134, 142-47 (2d Cir. 2007).  An honest-services fraud conspiracy (Count 2) involves an agreement to accept bribes or kickbacks in exchange for official acts.  *See* 18 U.S.C. §§ 1343, 1346, 1349; *Skilling v. United States*, 561 U.S. 358, 408-09, 412-13 (2010); *Ganim*, 510 F.3d at 148-50.  And the solicitation of bribes or gratuities

---

[1] Dean and Adam Skelos also intend to raise other appellate issues, but we do not discuss them here because the *McDonnell* jury instruction issue is plainly substantial within the meaning of the bail statute.

(Counts 6-8) involves payments either to influence official acts (bribes) or to reward them (gratuities). *See* 18 U.S.C. § 666(a)(1)(B); *Ganim*, 510 F.3d at 150-52.

Prior to trial, defendants moved to dismiss Counts Four and Seven of the Superseding Indictment on the ground that the allegations of official actions were legally insufficient. In connection with that motion, the parties disputed whether "activities outside the formal legislative process—such as arranging or attending meetings, speaking to third-parties on behalf of a constituent, or exerting influence gained by virtue of one's official position" could constitute official action. *United States v. Skelos*, 2015 WL 6159326, at *3 (S.D.N.Y. Oct. 20, 2015).[2] The Court denied the motion and agreed with the government's position that such activities could qualify as official acts. In so doing, the Court relied on then-controlling authorities from the Second Circuit, as well as Fourth Circuit cases including the decision subsequently reversed by the Supreme Court. *See id.* at *3 (citing, *inter alia*, *United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013); *United States v. Biaggi*, 853 F.2d 89, 97-98 (2d Cir. 1988); *United States v. Carson*, 464 F.2d 424, 433-34 (2d Cir. 1972); *United States v. Jefferson*, 674 F.3d 332, 356 (4th Cir. 2012), *as amended* (Mar. 29, 2012); and *United States v. McDonnell*, 792 F.3d 478, 510 (4th Cir. 2015)).

Following this ruling, the government proposed the following jury instruction to define "official act" for all counts:

> I have used the term 'official act' in describing the crimes charged in Counts One through Eight. The term 'official act' includes any act taken under color of official authority. These decisions or actions do not need to be specifically described in any law, rule, or job description, but may also include acts customarily performed by a public official with a particular position. In addition, official action can include actions taken in furtherance of longer-term goals, and an official action is no less official because it is one in a series of steps to exercise influence or achieve an end.

---

[2] The defendants also argued in the alternative that extending the extortion and bribery laws to cover the disputed conduct would render the statutes unconstitutional. (Dkt. 21 at 13-14).

(Dkt. 59 at 75).  In support of this proposed instruction, the government cited, *inter alia*, the

Fourth Circuit's decision in *McDonnell*.  (*Id.* at 76).  The defendants objected to this definition

for the reasons set forth in their motion to dismiss.  (*Id.*; Tr. 2129:16-18).  This Court overruled

the objection based upon its prior ruling.  (Tr. 2129:11-20).  In its final instructions, the Court

read the government's proposed definition of "official act" verbatim.  (Tr. 2798:9-18).

### B. The Supreme Court Invalidated A Nearly Identical "Official Acts" Instruction In *McDonnell*

One month after the verdict in this case, the Supreme Court granted certiorari in

*McDonnell*.  The question presented was whether "official action" under the federal anti-

corruption laws "is limited to exercising actual governmental power, threatening to exercise such

power, or pressuring others to exercise such power, and whether the jury must be so instructed;

or, if not so limited, whether the Hobbs Act and honest-services fraud statute are

unconstitutional."  (Pet. for Cert. at i, *McDonnell v. United States*, No. 15-474 (Oct. 13, 2015)).

*See also McDonnell*, 2016 WL 3461561, at *5 ("[W]e granted review to clarify the meaning of

'official act.'").

Former Virginia Governor Robert McDonnell and his wife had been convicted of federal

bribery charges in connection with $175,000 in loans, gifts of luxury items, and other benefits

they received from Virginia businessman Jonnie Williams, the founder of a Virginia company

promoting a new dietary supplement.  Williams wanted the drug to be classified as a

pharmaceutical.  However, his company could not afford the necessary clinical trials and studies,

and he hoped that McDonnell could persuade state universities to conduct this research.  *See id.*

at *1.  The official acts underlying Governor McDonnell's convictions included, *inter alia*,

"'arranging meetings' for Williams with other Virginia officials" to discuss his company's

product, "'hosting' events" for the company at the Governor's mansion, and "'contacting other government officials'" concerning studies of the product. *Id.*

As in this case, the parties disputed the definition of "official act." The defendant argued that activities such as arranging meetings, hosting events, and contacting other officials did not qualify; the government, on the other hand, argued that the term "official act" "encompasses nearly any activity by a public official," including those activities. *Id.* at *12. The district court overruled the objection and instructed the jury according to the government's broad theory. The *McDonnell* instruction included much of the same language as the instruction in the Skelos trial (and was, in fact, narrower). The Fourth Circuit agreed with the government's position and affirmed, in a decision that, as discussed above, this Court relied on to support the official act instruction in the Skelos trial. *See United States v. McDonnell*, 792 F.3d 478, 505-06 (4th Cir. 2015).[3]

---

[3] The *McDonnell* district court defined "official action" as follows:

> The term official action means any decision or action on any question, matter, cause, suit, proceeding, or controversy, which may at any time be pending, or which may by law be brought before any public official, in such public official's official capacity. <u>Official action as I just defined it includes those actions that have been clearly established by settled practice as part of a public official's position, even if the action was not taken pursuant to responsibilities explicitly assigned by law. In other words, official actions may include acts that a public official customarily performs, even if those actions are not described in any law, rule, or job description.</u> And a public official need not have actual or final authority over the end result sought by a bribe payor so long as the alleged bribe payor reasonably believes that the public official had influence, power or authority over a means to the end sought by the bribe payor. <u>In addition, official action can include actions taken in furtherance of longer-term goals, and an official action is no less official because it is one in a series of steps to exercise influence or achieve an end.</u>

*Id.* at 505-06. The underlined portions are virtually identical to the instruction here. The very first sentence of the instruction, which is not underlined, comes from 18 U.S.C. § 201(a)(3). It is significantly narrower than the first sentence of this Court's instruction in this case. ("The term

The Supreme Court reversed.  It rejected the government's broad interpretation of "official act" and held that "setting up a meeting, calling another public official, or hosting an event does not, standing alone, qualify as an 'official act.'"  *McDonnell*, 2016 WL 3461561, at *12.  The Court held that an "official act" "is a decision or action on a 'question, matter, cause, suit, proceeding or controversy,'" that involves "a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee."  *Id.* at *17 (quoting 18 U.S.C. § 201(a)(3)).  To qualify as an official act, "the public official must make a decision or take an action on that 'question, matter, cause, suit, proceeding or controversy,' or agree to do so."  *Id.*  That "decision or action may include using his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official."  *Id.*  However, *"[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so)—without more—does not fit that definition of 'official act.'"*  *Id.* (emphasis added).

Critically, the Court further held that the government's "expansive interpretation of 'official act' would raise significant constitutional concerns."  *Id.* at *18.  First, public officials "arrange meetings for constituents, contact other officials on their behalf, and include them in events all the time" as part of the "basic compact underlying representative government."  *Id.*  The Court discerned that the government's overly expansive theory could chill public officials' interactions with the people they serve and thus make it difficult for them to perform their duties.  *Id.*  Second, and relatedly, under the government's interpretation, the term "official act" raises a "serious" due process concern, because its sweep would be indefinite and would risk "'arbitrary

'official act' includes any act taken under color of official authority.").  The only other sentence not underlined above appeared in another portion of the charge in this case.  (Tr. 2783:1-5).

and discriminatory enforcement.'" *Id.* (quoting *Skilling*, 561 U.S. at 402-03). The Court's narrower construction was thus necessary to avoid a finding of unconstitutional vagueness. *Id.* Third, the government's construction raised "significant federalism concerns," which the Court's narrowing construction avoided. *Id.* at *19.[4]

In light of this holding, the Court agreed with Governor McDonnell that the jury instruction did not "convey any meaningful limits on 'official act'" and "allowed the jury to convict [him] for lawful conduct." *Id.* (quoting Brief for Petitioner 51). Critically, the Supreme Court expressly held that key language *virtually identical to the language of the instruction at the Skelos trial* was legally erroneous because it "lacked important qualifications, rendering [the instruction] significantly overinclusive." *Id.* The defective language included the statement that "'official actions may include acts that a public official customarily performs,' including acts 'in furtherance of longer-term goals' or 'in a serious of steps to exercise influence or achieve an end,'" *id.* (quoting *McDonnell* instructions), which also appeared in the Skelos instructions. (Tr. 2798:10-18 ("The term 'official act' includes . . . . acts customarily performed by a public official with a particular position. In addition, official action can include actions taken in furtherance of longer-term goals, and an official action is no less official because it is one in a series of steps to exercise influence or achieve an end.")). The Supreme Court also held fatally overbroad language stating that official action includes "actions that have been clearly established by settled practice as part of a public official's position, even if the action was not

---

[4] The Supreme Court also considered the text of the definition of "official act" in the federal-official bribery statute, 18 U.S.C. § 201(a)(3), which the government conceded was applicable to other anti-corruption statutes as well. *See McDonnell*, 2016 WL 3461561, at *9, *12-17. The Second Circuit previously suggested that the § 201 definition of "official act" may not apply to the Hobbs Act or § 666. *See Skelos*, 2015 WL 6159326, at *4. However, it is clear from the Supreme Court's ruling—and particularly its emphasis on the need for a narrow construction of "official act" to avoid serious constitutional problems—that the same construction applies to all of the federal anti-corruption laws. This is especially so in cases involving state or local officials, which raise the federalism concerns discussed by the Supreme Court.

taken pursuant to responsibilities explicitly assigned by law." *McDonnell*, 2016 WL 3461561, at *19 (quoting instructions). Again, the jury instructions here included substantially similar language stating that official "decisions or actions do not need to be specifically described in any law, rule, or job description, but may also include acts customarily performed by a public official with a particular position." (Tr. 2798:12-15). The jury instructions here also began with a sentence that was not used at McDonnell's trial but suggests that virtually anything a public official does in his official, as opposed to personal, capacity counts: "The term 'official act' includes any act taken under color of official authority." (Tr. 2798:10-11).[5] This language raises precisely the "significant constitutional concerns" the Supreme Court sought to avoid, because the government's "expansive interpretation" could cover "nearly anything a public official does." *McDonnell*, 2016 WL 3461561, at *18.

In light of the Supreme Court's express holding that nearly identical language in the *McDonnell* jury instructions was fatally defective, and the fact that the "official act" definition provided to the Skeloses' jury was even broader, there can be no serious dispute that the instruction in this case was legally erroneous. The far lower "substantial" question bar is thus easily met.

## II.     The *McDonnell* Error Is Likely To Result In At Least A New Trial

The Skeloses will likely be entitled (at a minimum) to a new trial under *McDonnell*. For each of the three schemes alleged by the government, at least one of the "official acts" that Dean Skelos purportedly traded for payments to his son involved merely setting up meetings, talking to other officials, or meeting with lobbyists—*i.e.*, precisely the types of conduct that the Supreme Court held insufficient to establish official action. The government highlighted the evidence of

---

[5] As discussed, the *McDonnell* district court instead quoted the narrower language of § 201(a)(3)—although that did not save its instructions. *See McDonnell*, 2016 WL 3461561, at *19.

this innocent conduct in its closing arguments and repeatedly told the jury, citing the erroneous jury instruction, that it could convict based on this evidence alone—without finding any official legislative act.

For example, with respect to Glenwood, the government argued to the jury that meetings between Dean Skelos and Glenwood lobbyists qualified as "official acts":

> So what other official actions was Glenwood seeking and getting from Senator Skelos during this time frame? Well, you heard that *one of the things that senators do in their official capacity is meet with lobbyists, and you also heard Senator Skelos met with Glenwood's lobbyists* regularly during this time period.
>
> There they are, back to back. Mark Lieberman, you heard about him, one of Glenwood's lobbyists, Richard Runes, chief lobbyist. *Every time the senator met with one of them on a lobbying meeting for Glenwood, that's official action.* All these meetings were taken by Senator Skelos in his official capacity.
>
> . . . Senator Skelos was actually asking for the payments *while he was performing the official action, meeting with the lobbyists to discuss legislation*[.] Glenwood got exactly what it paid for, official action from Senator Skelos in exchange for payments to Adam Skelos.

(Tr. 2516:25-2517:23 (emphasis added)).

The government made precisely the same argument when discussing the PRI scheme: "And then lobbyist meetings. [PRI chief executive] Anthony Bonomo told you that the senator was always very good about giving access to his lobbyists. And you heard the testimony that meetings with lobbyists are always taken in the senator's official capacity." (Tr. 2588:21-25).

For AbTech, the government repeatedly emphasized that the meeting Dean Skelos arranged between AbTech and the Department of Health was "devastating, devastating evidence" of "official action." (Tr. 2549:24-2550:4, 2550:20-22; *see also* Tr. 2523:25-2524:5 ("So the AbTech case is pretty much right there. Over."); Tr. 2699:17-19 ("[I]t was an official action for Senator Skelos to have that meeting set up.")). In discussing the meeting, the government

invoked the broad definition of "official action" that it knew the district court would read to the jury:

> Remember the defense has suggested time and time again that some of Senator Skelos' official actions were run-of-the-mill. Like . . . . having his staff set up a meeting for AbTech with the Department of Health. . . .
>
> The defense makes this argument because Senator Skelos is dead to rights . . . on having his staff get AbTech meetings. . . . *So the defense wants you to think that things like setting up meetings . . . don't really count as official actions. It's just wrong. Flat wrong.* An attempt to distract you. You can't take bribes . . . for any action under color of official authority. And I expect Judge Wood is going to tell you that official actions include acts customarily performed by a public official.

(Tr. 2487:15-2488:7 (emphasis added)).[6]

The government repeatedly undermined defense arguments that merely setting up meetings and the like was not official action. It maintained that such arguments "completely ignore[] the law." (Tr. 2487:12-14). And in rebuttal, the prosecution once again specifically highlighted the flawed jury instruction, and repeated its invitation to convict based on conduct that is innocent under *McDonnell*: "As you'll hear in the instructions, official acts runs the whole gamut[] . . . from setting up the meetings, calling Ed Mangano, calling the county and using official power in any of the ways that senators use official powers." (Tr. 2700:1-11; *see also* Tr. 2699:21-22 (urging the jury not to "focus specifically on yes or no votes on legislation")).

---

[6] The government went on to emphasize this point:

> Remember when Tony Avella, the senator, and others talked about when state legislators call other government officials about issues, when they make public statements, when they set up meetings with agents, when they meet with lobbyists, that they do all of that in their official capacity. The point of that testimony shows that all of those actions are official because senators like Dean Skelos do them all the time. They're official actions. . . . No matter how big, how small those actions are.

(Tr. 2488:8-17).

While *McDonnell* was still pending before the Supreme Court, the government argued that even if the Court ruled in McDonnell's favor, the Skeloses' convictions could be affirmed because the jury found that he took or offered to take other "official acts" that were not at issue in *McDonnell*. (Sentencing Tr. 65:8-68:22). But that argument is foreclosed by controlling precedent, now including *McDonnell* itself. Even if, as the government argues, the evidence could have supported a conviction on a valid legal theory of official action, that does not salvage a conviction obtained in case like this one, where the jury was also presented with (and *urged to adopt*) an invalid legal theory. In *McDonnell*, the Supreme Court acknowledged that the jury might have found "that Governor McDonnell agreed to exert pressure on [state] officials to initiate the research studies or add [Jonnie Williams' product] to the state health plan," which would qualify as official action, but the Court nevertheless reversed the conviction. *McDonnell*, 2016 WL 3461561, at *20-21. It did so because it was also "possible that the jury convicted Governor McDonnell without finding" a legally valid official act, and therefore it could not "conclude that the errors in the jury instructions were 'harmless beyond a reasonable doubt.'" *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)).

In vacating Governor McDonnell's conviction, the Court was applying the well-settled principle that "constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory." *Skilling*, 561 U.S. at 414 (citing *Yates v. United States*, 354 U.S. 298 (1957)); *see also Yates*, 354 U.S. at 312 (a verdict must "be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected"). In this situation, the conviction may be affirmed only if the government can "show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," *i.e.*, that "the guilty verdict actually

rendered in *this* trial was surely unattributable to the error." *United States v. Reed*, 756 F.3d 184, 190 (2d Cir. 2014) (quotation marks omitted).

Cases decided after *Skilling* are particularly instructive. In *Skilling*, the Supreme Court narrowed the scope of the honest-services statute, ruling that violations of fiduciary duty involving "undisclosed self-dealing" were not criminal unless the defendant received "bribes or kickbacks supplied by a third party." 561 U.S. at 404, 409. In the wake of *Skilling*, the Second Circuit explained that convictions should be "reversed in cases tried before *Skilling* . . . where the Government intertwined an alternative theory with a bribery or kickback scheme theory." *United States v. Botti*, 711 F.3d 299, 311 (2d Cir. 2013); *see also United States v. Mahaffy*, 693 F.3d 113, 136 (2d Cir. 2012) ("[W]ithout a charge that adequately explained what *Skilling* made clear the law requires, it is not clear beyond a reasonable doubt that the Defendants' convictions rested on unanimous findings of bribes or kickbacks."); *United States v. Bruno*, 661 F.3d 733, 739-40 (2d Cir. 2011) (vacating conviction because "the district court did not require the jury to find that Bruno accepted bribes or kickbacks"). Vacatur is especially appropriate where the government called attention to the invalid theory in its opening or closing arguments, as it did here. *See United States v. Hornsby*, 666 F.3d 296, 306-07 (4th Cir. 2012) (vacating conviction where "the [invalid] theory was 'interwoven' throughout the district court's honest-services fraud instruction to the jury" and the government emphasized the erroneous instruction in its closing argument); *United States v. Wright*, 665 F.3d 560, 572 (3d Cir. 2012) (holding that instructional error was not harmless where the "trial environment," including the government's closing arguments, "emphasized the [invalid] theory"); *United States v. Post*, 950 F. Supp. 2d 519, 534 (S.D.N.Y. 2013) (vacating conviction because although the invalid theory "was not necessarily the Government's primary theory, it was given individualized attention explicitly in

the Indictment, in the Government's opening and closing statements, and in the jury instructions").

For similar reasons, the Second Circuit has vacated other convictions for alternative-theory error as well. *See United States v. Banki*, 685 F.3d 99, 114 (2d Cir. 2012) ("Simply put, looking at the charge in the context of the entire trial, we are uncertain of the theory on which the jury chose to convict."); *United States v. Joseph*, 542 F.3d 13, 19 & n.5 (2d Cir. 2008) (rejecting the dissent's argument that it was "overwhelmingly likely" that the jury convicted on a valid theory because "the prosecutor . . . invited the jury to rely *solely* on the [incorrect] alternative [theory] in the charge"), *abrogated on other grounds by United States v. Ferguson*, 676 F.3d 260, 276 n.14 (2d Cir. 2011); *see also United States v. Garcia*, 992 F.2d 409, 413-16 (2d Cir. 1993) (vacating Hobbs Act extortion conviction because "the jury was given three disjunctive bases for conviction, [only] one of which was legally sufficient," and the Court could not "tell the basis upon which the jury based its conviction").

Here, it is abundantly clear that the jury could have relied on the potentially invalid theory of "official action." The instructions allowed the jury to convict solely for Dean Skelos arranging and attending meetings, and the government aggressively pursued and underscored this theory of guilt for the jury. The government cannot save the conviction by asking the Court of Appeals to make new findings of guilt on alternative grounds. Thus, it is highly likely that the *McDonnell* error will lead, at a minimum, to a new trial, and bail should be granted.

## III. The Court Should Stay The Financial Penalties Pending Appeal

The Court should also stay Dean Skelos's fine and the orders of forfeiture while the Skeloses' appeals are pending. The Court may "stay a sentence to pay a fine" on "any terms considered appropriate." Fed. R. Crim. P. 38(c); *see also* 18 U.S.C. § 3572(g) (describing required "[s]ecurity for stayed fine"). Similarly, the Court may "stay the order of forfeiture on

terms appropriate to ensure that the property remains available pending appellate review." Fed. R. Crim. P. 32.2(d).

In deciding whether to stay a fine, courts consider (1) the defendant's likelihood of success on appeal and (2) the threat of irreparable injury absent a stay. *See United States v. Coluccio*, No. 87-cr-077, 1993 WL 217133, at *1 (E.D.N.Y. June 15, 1993), *aff'd*, 9 F.3d 1536 (2d Cir. 1993); *United States v. Bestway Disposal Corp.*, 724 F. Supp. 62, 70 (W.D.N.Y. 1988); *see also United States v. Keifer*, No. 2:08-cr-162, 2012 WL 3878194, at *1, *4 (S.D. Ohio Sept. 6, 2012); *United States v. Koestner*, No. 4:08-cr-00093, 2010 WL 2595300, at *1 (S.D. Iowa June 22, 2010), *aff'd*, 628 F.3d 978 (8th Cir. 2010); *United States v. Walker*, No. 07-cr-50097-01, 2008 WL 4808837, at *2 (W.D. La. Oct. 31, 2008). Courts consider those factors in deciding whether to stay a forfeiture order as well. *See* Fed. R. Crim. P. 32.2 advisory committee's note, 2000 Adoption ("The purpose of [subdivision (d)] is to ensure that the property remains intact and unencumbered so that it may be returned to the defendant in the event the appeal is successful."); *United States v. Ngari*, 559 F. App'x 259, 272 & n.43 (5th Cir. 2014) (collecting cases); *United States v. Quinones*, No. 06-cr-845(S-2)(FB), 2009 WL 4249588, at *2 (E.D.N.Y. Nov. 25, 2009) (granting stay because of burden on defendant).

A stay is warranted here. First, as explained above, the appeals raise substantial questions that are likely to lead to a new trial. Those issues require bail pending appeal, and they also warrant a stay of the fine and forfeiture order.

Second, Dean Skelos would suffer irreparable injury absent a stay. The Court's judgment imposed a $500,000 fine, due in a lump sum. (Dkt. 196 at 7). Under the forfeiture order, Dean Skelos is also jointly and severally liable for a $334,120 judgment. (Dkt. 194). The fine *alone* far exceeds the cash in Mr. Skelos's possession. (Dean Skelos PSR at 21 ¶ 121). As a result,

Mr. Skelos would be required to liquidate (1) his deferred compensation, (2) his stock holdings, and/or (3) one of his two homes, which he holds jointly with his wife, Gail Skelos.[7]  (*Id.*).

Mr. Skelos's deferred compensation would be heavily taxed if liquidated.  *See* 26 U.S.C. § 457(a)(1) (funds paid out of state deferred compensation plans are included in gross income for tax purposes); *Taking Withdrawals In Retirement*, New York State Deferred Compensation Plan, www.nysdcp.com/iApp/tcm/nysdcp/support/howdoi/how_do_i_take_withdrawals_in_ retirement.jsp ("[R]eceiving a lump sum may push you into a higher tax bracket.").  The government would certainly not compensate Mr. Skelos for this loss if his convictions were vacated on appeal.

Mr. Skelos would be taxed if he sold his stocks as well.  Moreover, the stock market is particularly volatile at this time, in light of the United Kingdom's recent decision to leave the European Union and other world events creating uncertainty about global economic conditions.  If Mr. Skelos were required to sell his stock holdings in the near future, he could incur losses that might be avoidable if his fine were stayed pending appeal.  Under similar circumstances, a court in this Circuit found it prudent to grant a stay.  *See Quinones*, 2009 WL 4249588, at *2.[8]

---

[7] Mr. Skelos's IRA ($66,489), life insurance policy ($27,023), and third joint property ($6,000) would be insufficient to cover the fine.  (PSR ¶ 121).

[8] The analysis in *Quinones* is perfectly applicable here:

> The Court further concludes that the stay sought by Quinones is warranted under the circumstances.  The government does not dispute that the real-estate market in South Florida is in a slump.  If the government were to sell the four parcels in such a market, they would, in effect, be foregoing any potential for appreciation in value once the market recovers; this loss will ultimately be borne by Quinones if the forfeiture order is reversed on appeal.  The wiser course is simply to enjoin the government from selling the properties until its entitlement to them has been conclusively established.

2009 WL 4249588, at *2.

Finally, it is beyond dispute that selling one or both of the homes would result in irreparable injury. As residences, they are not fungible, and it is no answer for the government to say that Mr. Skelos can find another home if he wins his appeal. Moreover, Dean and Gail Skelos jointly own their homes. (PSR ¶ 121). As Gail Skelos is an innocent party, it would be senseless to force her to bear this loss when it is likely that her husband's convictions will be vacated on appeal.

In any event, there is no reason to require Mr. Skelos to liquidate his assets and pay the government immediately. So long as the Court imposes conditions to ensure that Mr. Skelos's assets remain available at the conclusion of appellate review, the government will suffer no injury. *See* 18 U.S.C. § 3572(g)(2) (allowing the court to require "a bond or other security" if the fine is stayed); *id.* § 3572(g)(3) (allowing the court to "restrain the defendant from transferring or dissipating assets").

For all of these reasons, the Court should grant bail and stay its fine and forfeiture order pending the Skeloses' appeals.

Dated:       July 11, 2016
             New York, New York

                                      Respectfully submitted,


                                      /s/ Alexandra A.E. Shapiro
                                      Alexandra A.E. Shapiro
                                      Shapiro Arato LLP
                                      500 Fifth Avenue, 40th Floor
                                      New York, New York 10110
                                      (212) 257-4880

                                      G. Robert Gage, Jr.
                                      Joseph B. Evans
                                      Gage Spencer & Fleming LLP
                                      410 Park Avenue, Suite 900
                                      New York, New York 10022
                                      (212) 768-4900

                                      *Attorneys for Dean Skelos*

                                      Christopher P. Conniff
                                      Ropes & Gray LLP
                                      1211 Avenue of the Americas
                                      New York, New York 10036
                                      (212) 596-9000

                                      *Attorneys for Adam Skelos*