FD-302 (Rev. 5-8-10)

- 1 of 7 -



# FEDERAL BUREAU OF INVESTIGATION

Date of entry   04/23/2015

    EDWARD AMBROSINO, date of birth ▇▇▇▇▇, home address ▇▇▇▇▇, ▇▇▇▇▇, was interviewed pursuant to a proffer agreement at the offices of the United States Attorney, Southern District of New York (SDNY), located at One Saint Andrew's Plaza, New York, New York. The proffer was attended by SA Jennifer M. Kibler of the Federal Bureau of Investigation, SDNY Assistant United States Attorneys Jason Masimore. Also present at the proffer was AMBROSINO's defense attorneys, David B. Massey and Grace C. Wen. After reviewing the proffer agreement with his attorney, AMBROSINO signed the agreement indicating he understood the conditions and thereafter provided the following information:

    AMBROSINO was hired by RUSKIN MOSCU FALTISCHEK (RMF) in November 2001. AMBROSINO has held the title of Of Counsel, for his entire time at RMF. At RMF, AMBROSINO concentrated on real estate and economic development work. Prior to working for RMF, AMBROSINO was counsel to Nassau County. AMBROSINO was previously the deputy commissioner of sanitation for the Town of Hempstead. AMBROSINO was still counsel for the Town of Hempstead.

    In approximately 2010, AMBROSINO became the general counsel for the Nassau County Industrial Development Agency (IDA). AMBROSINO did not obtain this position through RMF, however AMBROSINO's fees were tendered to RMF. AMBROSINO was friendly with ED MANGANO, who wanted AMBROSINO to be part of the town's economic development.

    AMBROSINO advised the IDA was a public benefit agency, created by New York State's Article 18a. AMBROSINO was unsure if it was Article 18a, or another Article. Sometimes there were legislative impairments to the IDA. For example, Governor CUOMO did not like IDA's involvement in retail, such as shopping malls. Legislation was enacted so IDAs could no longer be involved in retail projects.

    AMBROSINO could not recall if any legislation in 2011 impacted the IDA. After Hurricane Sandy, Nassau County wanted to help businesses affected by

Investigation on  04/20/2015  at  New York, New York, United States (In Person)

File #  194A-NY-5636957                                                Date drafted  04/21/2015

by  Jennifer M Kibler

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

AMBROSINO 3573-02

FD-302a (Rev. 05-08-10)

194A-NY-5636957

Continuation of FD-302 of  Proffer of Edward Ambrosino  , On  04/20/2015  , Page  2 of 7

the storm. Nassau County attempted to pass a bill which would allow the IDA to assist businesses affected by the storm, but it did not pass. IDA was self funded; it charged fees to its customers. An enabling statute gave the IDA its power. The IDA board members were recommended by the county executive and approved by the county legislature. The IDA board chose the IDA Executive Director.

AMBROSINO was shown several documents. The documents were attached in a 1A. The documents below were referenced by RMF numbers:

USAO RMF EA 001: a Catholic Health System of LI-Preliminary Resolution. AMBROSINO stated these were Catholic bond refinancing, not involved with the IDA, but a separate agency. It was prohibited by statute for IDA to be involved. In 2010 or 2011, AMBROSINO and the IDA formed LEAC. The IDA was initially permitted to give economic assistance to not-for-profits such as hospitals and schools, but that measure ended. The IDA formed the LEAC to provide economic assistance to not-for-profit organizations. The LEAC would mainly provide assistance through tax exempt bonds. No state approval was needed to form the LEAC. LEAC had a board of directors, but AMBROSINO could not recall who was on the board. AMBROSINO served as general counsel for LEAC. The bond counsel for LEAC and IDA were mostly the same people. LEAC released a Request For Proposal (RFP) for title insurance companies. AMBROSINO did not recall reviewing the proposals. AMBROSINO did not recall conversations with DEAN SKELOS (SKELOS) regarding title insurance for LEAC or IDA.

Several years ago, SKELOS told AMBROSINO that his son, ADAM SKELOS (ASKELOS), worked for a title insurance company. AMBROSINO could not recall the number of conversations between himself and SKELOS, but thought it was possible there was more than one. AMBROSINO knew ASKELOS moved between title companies. AMBROSINO thought ASKELOS was working for EAST COAST ABSTRACT, but had worked for AMERICAN LAND or FIRST AMERICAN. AMBROSINO saw SKELOS at multiple functions. SKELOS never asked AMBROSINO to refer title work to ASKELOS.

AMBROSINO advised a large part of the work performed by a title company was mandated. AMBROSINO could not recall how the title company for the Catholic Health System was chosen. AMBROSINO advised sometimes the applicant would request a particular title company. AMBROSINO did not recall a conversation regarding CHICAGO, EAST COAST ABSTRACT or FIDELITY. AMBROSINO could not recall anything regarding refinancing and EAST COAST ABSTRACT. AMBROSINO did not recall the title company used, because another attorney, NIXON PEABODY, chose the title insurance company.

USAO RMF EA 008: IDA meeting minutes from March 27, 2012. AMBROSINO did not recall attending the meeting, but knew he was present because he was

FD-302a (Rev. 05-08-10)

194A-NY-5636957

Continuation of FD-302 of  Proffer of Edward Ambrosino  , On  04/20/2015  , Page  3 of 7

listed in the minutes.  AMBROSINO advised LEAC had a separate procurement process from IDA.  AMBROSINO thought it was possible the IDA determined its title companies annually.  AMBROSINO had a conversation with JOSEPH KEARNEY, about the procurement of title companies, but not about the actual selection.  AMBROSINO did not recall SKELOS requesting KEARNEY use a specific title company in August 2011.  AMBROSINO did not have any conversations with SKELOS about the IDA.  AMBROSINO did not recall having any conversations with KEARNEY regarding ASKELOS.  AMBROSINO did not recall KEARNEY and SKELOS having any conversations about title work.

AMBROSINO recommended the IDA use a procurement process to identify qualified title insurance companies.  IDA staff were involved in recommending title companies.  AMBROSINO was not involved in the selection.  AMBROSINO knew ASKELOS worked at EAST COAST ABSTRACT. AMBROSINO did not recall having any conversations about ASKELOS working at EAST COAST ABSTRACT in relation to LEAC or IDA.

USAO RMF EA 010 to USAO RMF EA 015: title company services approved list resolution.  AMBROSINO did not recognize the Secretary's signature. AMBROSINO did not recall SKELOS discussing where title work should go for any deal.

USAO RMF EA 016 to USAO RMF EA 022: a series of resolutions regarding the purchase of the BRISTALS. AMBROSINO did not know how the title companies were selected.  The title company was selected from a pool of eligible vendors.  The Executive Director made the final decision about which title company to use.  RMF did not represent ENGEL BURMAN.  RMF would never represent a client involved in the IDA because of AMBROSINO's involvement in the IDA.

At RMF, AMBROSINO referred work to title insurance companies.  AMBROSINO referred work to EAST COAST ABSTRACT, such as residential and commercial deals.  AMBROSINO knew of EAST COAST ABSTRACT because he had known JOSEPH CAIRO, an EAST COAST ABSTRACT employee, since AMBROSINO was ten years old. AMBROSINO did not know if CAIRO received a commission for the ENGEL BURMAN deal.  AMBROSINO described the ENGEL BURMAN BRISTAL deal as a hold over transaction from the previous administration of TOM SWAZZY (ph).  SWAZZY's original IDA completed the original portfolio, which was then sold to another entity.  ENGEL BURMAN bought the portfolio, which was approved by all the villages except for Westbury.  AMBROSINO advised he did not make referrals for title insurance while at LEAC or IDA.

AMBROSINO did not recall SKELOS telling AMBROSINO to refer work to EAST COAST ABSTRACT.  AMBROSINO also did not recall any conversations with SKELOS about referral work to EAST COAST ABSTRACT. AMBROSINO did not recall having any conversations with ASKELOS regarding EAST COAST ABSTRACT.

AMBROSINO mainly saw ASKELOS at events such as golf outings and political functions, and possibly at the RMF office. AMBROSINO could not recall having conversations with ASKELOS about the potential of title work.

AMBROSINO referred a variety of work to EAST COAST ABSTRACT. When EAST COAST ABSTRACT was conflicted out, AMBROSINO used other title insurance companies, but could not recall their names. AMBROSINO did not believe ASKELOS was working for EAST COAST ABSTRACT when AMBROSINO made his first referral to EAST COAST ABSTRACT. AMBROSINO was unaware of other RMF employees giving referrals to EAST COAST ABSTRACT or CHICAGO TITLE INSURANCE.

When SKELOS became the majority leader, there was an understanding at RMF of how to interact with SKELOS. RMF retained an ethics attorney who designed parameters for interactions with SKELOS. AMBROSINO did not recall sitting down with anyone and discussing this issue. AMBROSINO advised it was OK to ask SKELOS general questions like when the Senate was in session, but could not ask SKELOS specific questions which would require SKELOS to take action.

AMBROSINO provided KEARNEY's cell phone number, ███████████.

RMF017480: an email dated 5/4/2006. ED CUMMING worked for AMBROSINO at the Town of Hempstead. This email was regarding town business. AMBROSINO advised it was difficult to check his town email address from RMF and as a result often conducted town business using his RMF email account. GREG YUKNEK wanted money for a library. The town was not a client of RMF.

AMBROSINO had met ASKELOS' wife, but did not know what her job was.

RMF017481: an email dated 5/22/2006. This email was regarding RMF business. WILIAM UBERT was a partner at RMF. MICHAEL SCHNIPPER was an associate at RMF. A not-for-profit organization was formed and it needed a permit from the Department of Education. AMBROSINO did not remember this email.

RMF017490: an email dated 5/22/2007. This email chain was not regarding RMF business. JEFF SELTZER was on the LEAC board. SELTZER wanted to meet LUTZ or HANOVER to obtain information regarding banks. AMBROSINO advised, "it was just a Jeff [SELTZER] inquiry." RMF did not represent SELTZER's company, PIERCE YATES.

RMF017499: an email dated 9/20/2007. This email chain was regarding Town of Hempstead business. TRAMMEL CROW RESIDENTIAL was located on the hamlet of West Hempstead. RMF could not represent TRAMELL CROW. TRAMELL CROW's lawyers wanted to offset some MTA costs and so AMBROSINO suggested they

contact SKELOS because SKELOS was on the MTA board. SKELOS was happy about this project because it removed a pay by the hour motel, which a blight to the area.

RMF017500: an email dated 12/19/2007. JERRY SECKLER (ph) was a high school coach. SECKLER wanted a to build an athletic facility, which ultimately did not happen. SECKLER was an RMF client, but not on this issue. SECKLER was an RMF client for his not-for-profit in Islip.

RMF017503: an email dated 4/13/2008. AMBROSINO did not recall this email. AMBROSINO advised this email was about a dispute with a law firm concerning RMF hiring an attorney. There was an issue with how the attorney would transfer clients. D'AMATO was friendly with STEVE SLESCHERBER (ph), and AMBROSINO hoped D'AMATO could smooth over the issue.

RMS001923: an email dated 5/6/2009. AMBROSINO was not on this email chain. AMBROSINO advised this email chain was regarding a property in West Hempstead. BERNARD SHERECK wanted to put an arena in the proposed property. AMBROSINO was not aware that RMF represented SHERECK. AMBROSINO did not recall a conversation with LENO regarding this email.

RMF017575: an email dated 8/14/2009. SKELOS brought JOHN STALUPPI, of ATLANTIC AUTO, to RMF. ATLANTIC AUTO had litigation against a newspaper for inflating how many newspapers it sold to increase how much it charged for advertisements. However, AMBROSINO separately brought STALUPPI to RMF for economic development because ATLANTIC AUTO was looking to expand. PJ FORCINO was a managing director at RMF. Ultimately SKELOS and AMBROSINO split the origination fee for STALUPPI. AMBROSINO thought FALTISCHEK was possibly protecting his own origination interests.

RMF017624: an email dated 1/5/2011. This email was not regarding RMF business. AMBROSINO knew BRIAN MCMAHON personally. MCMAHON was going to have a conference and wanted SKELOS to be the keynote speaker.

RMF07677: an email dated 2/6/2011. YOSSI LIEBERMAN had a dinner every year. SKELOS was going to be honored at this dinner. When LIEBERMAN wrote, "we can maximize our efforts," AMBROSINO understood this to mean, sell as many tickets as possible.

RMF017686: an email dated 2/9/2011. JOHN COTTI was a lawyer, a former county legislative and the drummer for the same rock band as AMBROSINO.

RMF017707: an email 3/24/2011. RAFE LIEBER was a former SCHUMMER staffer. LIEBER wanted SKELOS to sign a letter. AMBROSINO did not know who LIEBER was asking for. AMBROSINO did not know if he sent the letter to SKELOS. LIEBER knew AMBROSINO knew SKELOS, which was why LIEBER contacted

AMBROSINO. LIEBER was an RMF client in a personal matter, but it went nowhere. AMBROSINO thought forwarding the letter to SKELOS would be within in RMF's guidelines for interacting with SKELOS. AMBROSINO thought this letter was general and on the macro level of a policy issue. AMBROSINO did not recall this letter and did not know if he sent it to SKELOS. AMBROSINO stated the letter was generic and would have been OK to send to SKELOS. AMBROSINO did not recall ever receiving a request which he deemed inappropriate to pass on to SKELOS.

RMF017711: an email dated 3/26/2011. AMBROSINO stated this was and was not RMF business. WEISS heard AMBROSINO speak. WEISS wanted to know SAUER, but AMBROSINO knew SKELOS. AMBROSINO did not recall speaking to SKELOS about this issue.

RMF017782: an email dated 7/11/2011. AMBROSINO did not recall if he spoke to SKELOS about OORAH. RMF did not represent STEVEN WEISS. WEISS represented applicants and worked with RMF.

RMF017801: an email dated 7/29/2011. LDC stood for the LOCAL DEVELOPMENT CORPORATION. The LDC was the same as the LEAC, but in this county.

RMF017875: an email dated 9/20/2011. ROLLS-ROYCE was considering moving its US headquarters from Virgina to Long Island. AMBROSINO was part of the pitch team for ROLLS-ROYCE. AMBROSINO flew down to Reston, Virginia to pitch ROLLS-ROYCE. AMBROSINO told ROLLS-ROYCE SKELOS was part of RMF and was the Senate Majority Leader. AMBROSINO told ROLLS-ROYCE about SKELOS because it was a fact mentioned in RMF's brochure.

RMF002160, RMF002164 and RMF002169: letters addressed to THOMAS P. DALE, Executive Vice President, General Counsel for ROLLS-ROYCE NORTH AMERICA Inc. AMBROSINO did not recall who drafted these letters, but thought it was a collaboration. AMBROSINO did not recall participating in creating these letters.

RMF002164: a letter addressed to THOMAS P. DALE, Executive Vice President, General Counsel for ROLLS-ROYCE NORTH AMERICA Inc. This email documented changes that were made to it. One change was to page RMF002166, in the paragraph beginning "with our deep connection," which changed a line to include, "Key state officials, including Governor Cuomo and our colleague, Senator Dean Skelos, the Majority Leader of the New York State Senate." AMBROSINO stated having the government's support was a factor for ROLLS-ROYCE's move because it would make the process easier. YACOV SHAMASH was a friend of SKELOS. The meeting with SHAMASH never happened. AMBROSINO did not recall if the letter was proofed by the ethics counsel. AMBROSINO did not believe it was an inappropriate use of SKELOS' position. AMBROSINO did not believe there was a conflict of interested in the letter

194A-NY-5636957

Continuation of FD-302 of Proffer of Edward Ambrosino , On 04/20/2015 , Page 7 of 7

for SKELOS.  The meetings were suggested to take place at the RMF offices because of convenience.  Today, AMBROSINO would probably would have encouraged RMF not to send the letter due to the recent publicity of an investigation of SKELOS.

RMF017995: an email dated 12/19/2011.  This deal had to do with FAGE YOGURT.  AMBROSINO thought SKELOS might have known FAGE president IOANNIS PAPAGEORGION.

RMF018003: an email dated 12/19/2011.  AMBROSINO did not recall speaking to SKELOS about this matter.  RMF never represented WEISS.  WEISS asked for a meeting with FAGE.  AMBROSINO hoped FAGE would hire WEISS, but did not expect to necessarily receive work from WEISS at FAGE.  AMBROSINO hoped WEISS would return the favor and send work to RMF, but helping WEISS was not contingent on being provided with work later.  AMBROSINO estimated WEISS had brought him approximately twenty clients over their entire working relationship.  AMBROSINO did not know if there was an introduction between WEISS and FAGE.

RMF018008: an email dated 12/27/2011.  AMBROSINO did not recall if he participated in this draft.  AMBROSINO did not recall seeing pitch letters between RMF and WEISS.  AMBROSINO did not know if FAGE responded to this email.