FD-302 (Rev. 5-8-10)

-1 of 5-



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry   05/20/2015

BRAD GERSTMAN, date of birth (DOB) ██████, home address ████████████████████████████, phone number ████████████ was interviewed at the offices of the United States Attorney, Southern District of New York (SDNY), located at One Saint Andrew's Plaza, New York, New York. Present for the interview were SA Jennifer M. Kibler, and Assistant United States Attorneys Jason Masimore and Tatiana Martins. After being advised of the identity of the interviewing Agent and the nature of the interview, GERSTMAN provided the following information:

GERSTMAN worked for RUSKIN MOSCOU FALTISCHEK (RMF) for approximately one year, from 2008 to 2009. GERSTMAN was of counsel to RMF and was a non-equity partner of ISLAND STRATEGIES. DAVID SCHWARTZ was GERSTMAN's business partner for GOTHAM GOVERNMENT RELATIONS. SCHWARTZ and GERSTMAN launched the lobby firm, ISLAND STRATEGIES, because they were interested and wanted to be more involved in lobbying. RMF contacted GERSTMAN and SCHWARTZ and they were pitched to join RMF. RMF employees, JERRY KREMER and MIKE FALTISCHEK, made the pitch. RMF employee, MEL BRUSKIN, possibly pitched GERSTMAN and SCHWARTZ as well. GERSTMAN was not pitched by DEAN SKELOS (DSKELOS). GERSTMAN first met FALTISCHEK at the GLENHEAD COUNTRY CLUB. GERSTMAN knew FALTISCHEK more than DSKELOS. GERSTMAN left RMF because he did not like the lack of freedom. GERSTMAN did not do any legal work at RMF. GERSTMAN had legal clients. GERSTMAN had a client from Las Vegas, PETER LICK.

GERSTMAN met DSKELOS through special needs lobbying a few years before he worked for RMF. JOE BRUNO introduced GERSTMAN to DSKELOS. GERSTMAN did not think DSKELOS knew who GERSTMAN was. GERSTMAN was aware DSKELOS worked at RMF.

RMF's lobbying team consisted of: KREMER, FINK, who was the former Speaker's son, GERSTMAN and SCHWARTZ. GERSTMAN and SCHWARTZ brought new

Investigation on  03/17/2015  at  New York, New York, United States (In Person)

File #  194A-NY-5636957                                        Date drafted  03/18/2015

by  Jennifer M Kibler

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

GERSTMAN 3577-01

clients to RMF. GERSTMAN and SCHWARTZ could go to Albany more often than KREMER because KREMER was getting old.

GERSTMAN did not earn a salary at RMF, instead GERSTMAN was paid for his clients. GERSTMAN earned 15% for bringing in new business and 30% if he worked on the business. According to GERSTMAN, lobbying was not billable.

At RMF, GERSTMAN stated there was a "hard and fast rule" not to lobby SKELOS. GERSTMAN thought FALTISCHEK probably told GERSTMAN of the rule, but everyone at RMF knew the rule. GERSTMAN advised not being able to lobby DSKELOS was a handicap. GERSTMAN was not allowed to lobby SKELOS in Albany. GERSTMAN did not recall lobbying DSKELOS with clients. GERSTMAN did not send any clients to meet DSKELOS. Potential legal clients, especially from Long Island, wanted to meet DSKELOS. GERSTMAN stated he was not an RMF insider and so he wouldn't know if KREMER and DSKELOS spoke.

GERSTMAN thought he met ADAM SKELOS (ASKELOS) sometime between 2008 and 2010. GERSTMAN met ASKELOS in Albany at a political event. GERSTMAN and ASKELOS became friendly. GERSTMAN thought they bonded because both of their sons had developmental disabilities. GERSTMAN thought ASKELOS worked in gas and electric and then went into title work. ASKELOS worked for a utility reduction service. GERSTMAN may have given ASKELOS names for the utility reduction business, but GERSTMAN did not fully understand what ASKELOS was doing. ASKELOS met with GERSTMAN and SCHWARTZ at GOTHAM in their Rossalyn office, but GERSTMAN did not fully understand ASKELOS' pitch.

Prior to working for RMF, GERSTMAN was on the board of the NASSAU COUNTY MEDICAL CENTER (NCMC). The board for the NCMC was politically chosen. The Nassau Democratic Majority selected GERSTMAN for the position. GERSTMAN met with the presiding officer, JUDY LNU. ASKELOS asked GERSTMAN to schedule a meeting for him with the NCMC. GERSTMAN thought the meeting had to do with title work. GERSTMAN scheduled a meeting for ASKELOS with the NCMC. GERSTMAN was on the NCMC board for five years, and left in the same time period as he left RMF. GERSTMAN left because the NCMC became democratic. GERSTMAN did not know about Regional Development Counsels or IDAs.

GERSTMAN was shown the following documents, which were attached in a 1A:

RMF009796: an email dated 01/13/2009. GERSTMAN thought the name, ISLAND STRATEGIES, sounded limited to the Long Island area. GERSTMAN wanted to change the name to broaden the client base. GERSTMAN believed ISLAND STRATEGIES was a separate legal entity from RMF, however there were

overlapping partners. GERSTMAN recalled FALTISCHEK and KREMER were partners for both entities. LIBERMAN did some lobbying working for KREMER. GERSTMAN described FALTISCHEK as independent and "kinda like of counsel to EMPIRE." FALTISCHEK was in Albany Monday through Thursday. FALTISCHEK and DSKELOS had a good relationship; they lived in the same town. FALTISCHEK had his own practice with his own clients. GERSTMAN advised FALTISCHEK was close to all of the republicans. GERSTMAN never worked in legislature.

RMF12264: an email dated 1/14/2009. GOTHAM did not have a board of advisers. The board of advisers for ISLAND consisted of reputable community members. GERSTMAN advised STEVE COHN was known in political circles.

RMF009021: an email dated 2/26/2009. The email was regarding stimulus money coming and that RMF was positioned well to help. GERSTMAN did not try to say that because of DSKELOS they were well positioned to help. In the email, GERSTMAN wrote to tell people about EMPIRE MARKET STRATEGIES. GERSTMAN stated elected officials should not be part of law firms because it made no sense.

GERSTMAN advised there were no overt conversations about how to use DSKELOS to create business. GERSTMAN stated he was a peon at RMF and was not in those circles.

GERSTMAN suggested the investigative team talk with RMF leadership and to big RMF clients like CATHNESS, LAND DEAL and LIPPA. GERSTMAN did not know how FALTISCHEK got on the LIPPA board. GERSTMAN advised DSKELOS gave out a lot of appointments. Although GERSTMAN and DSKELOS shared a secretary, GERSTMAN rarely saw DSKELOS. GERSTMAN did not think JON KAIMAN had any first hand information. DWYER was GERSTMAN's councilman. DWYER and CAIMAN were friends. GERSTMAN did not know what DWYER did with MCKENNA. DWYER lived in Dix Hills. GERSTMAN did not know about DWYER's business.

RMF008948: an email dated 3/27/2009. COREY RIBOTSKY was not a client of RMF, EMPIRE or ISLAND, but was a client of GERSTMAN after GERSTMAN left RMF. GERSTMAN knew RIBOTSKY from their neighborhood. RIBOTSKY worked on hedegefunds. GERSTMAN advised people looked down on the pipe investment industry. DAVID SCHWARTZ suggested they meet with DSKELOS. GERSTMAN did not know if this was lobbying. GERSTMAN did not remember the email.

RMF010880: an email dated 3/31/2009. HOWARD SCHAUB was a potential new client. GERSTMAN and SCHAUB were personal friends. SCHAUB had a problem and was a land owner in Tuxedo, NY. GERSTMAN thought it was possible MORAHAN was a State Senator. SCHAUB's problem never got resolved.

GERSTMAN advised DSKELOS was an icon on Long Island and people often went to DSKELOS for advise on problems.

RMF010990: an email dated 3/21/2009. MICHAEL CARIDI was the owner of PERF GO GREEN, eco-friendly cleaners. GERSTMAN did not know what they were lobbying. GERSTMAN did not recall the meeting happening.

RMF009099: an email dated 4/1/2009. GERSTMAN knew LAURA ABRAMS. The SCHOOL FOR LANGUAGE was still with EMPIRE and indicated they knew DSKELOS. ASKELOS many have attended that school for a short period of time. ASKELOS may have pitched the school for title work. GERSTMAN did not know if ASKELOS pitched the school for utility work. GERSTMAN knew CANON was a big client, but did not know the specifics.

GERSTMAN was the partner and President of EMPIRE. GERSTMAN was on the Governor's council to child violence. GERSTMAN recently went to Albany and spoke about how games such as XBOX affected children.

GERSTMAN knew GLEN COVE wanted a meeting with DSKELOS and tried to set it up through ASKELOS. GLEN COVE did not retain ASKELOS. No meeting was set up. GERSTMAN advised ASKELOS "got nasty and childish" when his services were not retained. GERSTMAN did not recall it being connected to anything. In general, GERSTMAN heard ASKELOS did not have the skills to work out issues. To GERSTMAN, ASKELOS seemed kind and gentle.

An email dated 9/4/2010. GERSTMAN advised CHRIS COX was running and needed endorsements. GERSTMAN did not know that DAVID SCHWARTZ reached out to ASKELOS. GERSTMAN did not know if ASKELOS was given anything in return.

An email dated 10/21/2010. GERSTMAN did not know hutchins@nysenate.gov. GERSTMAN did not recognize the email. GERSTMAN was surprised an email flowed from DSKELOS to ASKELOS to himself. GERSTMAN knew JUDGE FISCH. GERSTMAN advised SCWARTZ's relationship with ASKELOS was friendly.

An email dated 1/23/2011. GERSTMAN advised ASKELOS was immersed in politics. GERSTMAN was unaware if DSKELOS took liberties for ASKELOS. GERSTMAN sent emails out to many people looking for contacts.

An email dated 4/16/2011. GERSTMAN advised he was networking with VINCE TABONE for ASKELOS' real estate title work. GERSTMAN had a relationship with TABONE. GERSTMAN did not recall the email.

An email dated 4/16/2011. RODERICK BENRUBI was involved in NASSAU UNIVERSITY MEDICAL CENTER (NUMC). In March 2011 there was title work available because NUMC was splitting up. GERSTMAN could not recall if he was still on the board. GERSTMAN advised NUMC and NCMC were the same

entity. GERSTMAN advised there was a meeting and possibly a follow up phone call. Additionally, there may have been a follow up meeting.

GERSTMAN advised PREMIER PAWN was a former client, but was not from RMF. GERSTMAN did not promise anything to ASKELOS for setting up a meeting with DSKELOS. NICOLE PUCKAM was an assistant at GOTHAM.

GERSTMAN was surprised a school would ask ASKELOS to set up a meeting with DSKELOS. GERSTMAN was the government mediator, so it should have gone through him. GERSTMAN advised they, the school, were not shy about asking to talk with politicians.

GOTHAM did not retain ROCKLAND. GERSTMAN advised GOTHAM did not need ASKELOS to lobby DSKELOS because they were not lobbying, it was administrative. GERSTMAN did not know why they went through ASKELOS.

GERSTMAN never gave ASKELOS anything, just referrals. BENRUBI hated republicans and had a problem with ASKELOS. DWYER was a democrat. GERSTMAN did not know if DWYER worked with ADAM. GERSTMAN recently saw DWYER at the State of the State. GERSTMAN has not been in contact with ASKELOS in the last few months and did not recall seeing ASKELOS at the State of the State.

GERSTMAN did not recall ASKELOS having any other business opportunities in addition to title and utility. GERSTMAN described ASKELOS has having low quality stuff. GERSTMAN did not think ASKELOS bragged about real estate contracts. GERSTMAN did not know if ASKELOS did anything with red light cameras.

GERSTMAN always heard the relationship between ED MANGANO and DSKELOS was strained.