USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/17/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

DEAN SKELOS and ADAM SKELOS,

Defendants.
-------------------------------------------------------X

15-CR-317 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

The Government has charged Defendants Adam Skelos and Dean Skelos with extortion in violation of 18 U.S.C. §§ 1951–52, with honest services fraud in violation of 18 U.S.C. §§ 1343 and 1346, and with soliciting and accepting bribes and gratuities in violation of 18 U.S.C. § 666(a). Defendants have served subpoenas duces tecum on several non-parties, including the New York State Department of Financial Services ("DFS"), Administrators for the Professions, Inc. ("AFP"), Physicians Reciprocal Insurers ("PRI"), Anthony Bonomo, and Carl Bonomo (collectively, the "PRI Parties"). The PRI Parties and the Government have moved to quash these subpoenas. Defendants have also served subpoenas duces tecum on non-parties Charles Dorego, Glenwood Management Corp. ("Glenwood"), and Steven Swarzman (collectively, the "Glenwood Parties"). The Glenwood Parties and the Government have moved to quash these subpoenas.

For the reasons set forth below, the Court (i) GRANTS the Government's and the PRI Parties' motions to quash the subpoenas served on the PRI Parties, and (ii) partially GRANTS and partially DENIES the Government's and the Glenwood Parties' motions to quash the subpoenas served on the Glenwood Parties as follows: (1) Requests 1, 2, 3, and 5 to Dorego, as well as Request 1 to Glenwood, are NOT QUASHED, and Dorego and Glenwood shall produce responsive documents to the Court on or before June 13, 2018; (2) Request to Dorego 4 is

QUASHED; (3) Request to Dorego 6 and Request to Glenwood 3 are NOT QUASHED, and on or before June 13, 2018, Dorego and Glenwood shall produce to Defendants and the Government any documents responsive to these requests that they have not already produced to the Government; (4) Request to Dorego 7 and Request to Glenwood 4 are NOT QUASHED, but are modified as discussed below, and Dorego and Glenwood shall produce responsive documents to Defendants and the Government on or before June 13, 2018; (5) Request to Glenwood 2 is QUASHED; and (6) Request to Swarzman 3 is QUASHED.

## I. LEGAL STANDARD

Rule of Criminal Procedure 17(c)(2) permits the court to quash a subpoena "if compliance would be unreasonable or oppressive." Under *United States v. Nixon*, the party requesting the subpoena has the burden of showing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" 418 U.S. 683, 699-700 (1974) (footnote omitted).

Although the *Nixon* Court did not decide whether this four-part test applies to subpoenas served on third-parties in particular, courts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties. *See, e.g., United States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 8735699 (S.D.N.Y. Feb. 12, 2016) (Nathan, J.) ("[T]he overwhelming majority of district courts in the Second Circuit have applied the Nixon analysis" to "defense subpoena requests to third parties."); *United States v. Rivera*, No. 13-CR-149 (KAM), 2015 WL 1540517, at *4 n.1 (E.D.N.Y. Apr. 7, 2015) ("This court agrees with the other district courts in the Second Circuit that the *Nixon* standard governs third-party subpoenas issued by the

defense."). Only one decision—*United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (Scheindlin, J.), *as amended* (Feb. 20, 2008)—has suggested applying a different standard, and that standard has generally been rejected. *See United States v. Bergstein*, 16-CR-746 (PKC), 2017 WL 6887596, at *4 (S.D.N.Y. Dec. 28, 2017) (Castel, J.) ("'[T]he overwhelming majority of district courts in the Second Circuit have [instead] applied the *Nixon* analysis to such requests' because the relaxed *Tucker* standard is not prevailing law of the Circuit.") (quoting *Pena*, 2016 WL 8735699, at *1); *United States v. Barnes*, 2008 WL 9359654, at *3 (S.D.N.Y. April 2, 2008) (Robinson, J.) ("Though the *Tucker* Court found this relaxed standard appropriate, it is not the prevailing law. Indeed, all district courts within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense.").

This Court applies the *Nixon* standard, pursuant to which a criminal subpoena should not be used as "a discovery device," but instead should be used only as "a mechanism for obtaining specific admissible evidence." *Barnes*, 2008 WL 9359654, at *4; *accord United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (Haight, J.) ("Rule 17(c) is not a method of discovery in criminal cases.") The "materials [sought under Rule 17] must themselves be admissible" at trial; it is not enough that they "contain information which could be admissible." *Cherry*, 876 F. Supp. at 552. To that end, Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be "inadmissible as evidence at trial." *United States v. Brown*, No. 95 CR. 168 (AGS), 1995 WL 387698, at *10 (S.D.N.Y. June 30, 1995) (Schwartz, J.). Documents bearing on a witness's decision to "cooperate with the government" or any bias towards the defendant, however, can be proper subjects of a Rule 17(c) motion because those types of documents may themselves be admissible into evidence. *United States v. Orena*, 883 F. Supp. 849, 869 (E.D.N.Y. 1995); *United States v. Carollo*, No. 10 CR 654 HB, 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012) (Baer, J.)

3

(holding that evidence of "bias or a motive on the part of [the witness] to cooperate with the government" is proper subject of Rule 17(c) subpoena). Similarly, documents containing prior statements of a witness that are inconsistent with that witness's testimony at trial can be admissible under Federal Rule of Evidence 613, and so can be the proper subject of a Rule 17(c) subpoena. *United States v. Ferguson*, No. 3:06-CR137(CFD), 2007 WL 4577303, at *3 (D. Conn. Dec. 26, 2007) (holding that prior inconsistent statements of testifying witnesses are "properly within the scope of [a] Rule 17(c) subpoena").

Evidence showing a witness's motive to cooperate, showing bias, or containing prior inconsistent statements, however, does not become relevant until the witness testifies. For this reason, many courts have held that production of impeaching evidence pursuant to Rule 17(c) is not required until after the witness testifies. *United States v. Seabrook*, No. 16-CR-467, 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017) (Carter, J.) ("[D]espite the fact that it is a virtual certainty that [the witness] will testify in this matter, the weight of the authority in this Circuit favors production when the witness testifies."); *United States v. Giampa*, No. S 92 CR. 437 (PKL), 1992 WL 296440, at *4 (S.D.N.Y. Oct. 7, 1992) (Leisure, J.) (modifying subpoenas for impeachment materials "to make them returnable at the time when [the witness] testifies at trial"). To avoid delay in trial, courts sometimes require production of impeaching material to the court (but not to counsel), with the court reviewing these documents *in camera* and then disclosing any admissible documents only after the witness testifies. *United States v. Cuthbertson*, 630 F.2d 139, 145 (3d Cir. 1980) (affirming decision of district court requiring "pretrial production to the court" in order "to avoid unnecessary delay and disruption of the trial").

## II. DISCUSSION

### A. <u>Subpoenas Served on PRI Parties</u>

The PRI Parties and the Government have moved to quash subpoenas served on the PRI Parties. (ECF Nos. 258, 264, 268, 269.) These subpoenas demand production of between eight and thirteen categories of documents. (*See* Gov't PRI Mot.,[1] Exs. A–E.) In their opposition papers, however, Defendants have agreed to limit their demands "for the present purposes" to the following four categories of documents relating to the current DFS investigation of PRI:

(1) documents that PRI, AFP, and the Bonomos have produced to DFS,

(2) transcripts of the depositions conducted by DFS, including the exhibits to those depositions,

(3) the DFS "interrogatories" and the answers provided, and

(4) communications between DFS and the government.

(Defs.' PRI Opp'n,[2] at 8.)

Although these demands are narrower than those Defendants originally made in their subpoenas, they are still unreasonable under Rule 17(c) and *Nixon* because they are not sufficiently specific and request the production of documents that are either not admissible at trial or are obtainable through other means.[3]

#### 1. Request 1

Defendants demand all "documents that PRI, AFP, and the Bonomos have produced to

---

[1] "Gov't PRI Mot." refers to the Government's letter motion to quash, dated March 2, 2018, ECF No. 258.

[2] "Defs.' PRI Opp'n." refers to "Memorandum of Law in Opposition to Motions to Quash Subpoenas Served on DFS, AFP, PRI, Anthony Bonomo, and Carl Bonomo," ECF No. 273.

[3] DFS contends that Defendants' subpoenas should be quashed because they seek information protected from disclosure under New York Insurance Law § 311(b) and by the law enforcement privilege. (DFS Mem., ECF No. 265, at 7–10.) Because Defendants' subpoenas are being quashed on other grounds, this Court does not reach the question of whether the documents are privileged.

5

DFS" as part of DFS's investigation into PRI. (Defs.' PRI Opp'n, at 8.) According to Defendants, this DFS investigation "found that Bonomo cooked PRI's books 'and then tried to cover it up.'" (*Id.*, at 1.) Defendants contend they are entitled to all of the documents that PRI, AFI, and the Bonomos produced to DFS because, *inter alia*, they may show that "the government's star witness, Anthony Bonomo, engaged in rampant fraud and other misconduct in his management of PRI." (*Id.*)

Although Defendants know that the documents they are seeking were produced by PRI, AFP, and the Bonomos as part of the DFS investigation, they do not know the scope of that investigation (or the volume of documents produced to DFS that are relevant to this case). Because Defendants do not know the universe of documents they are requesting, they cannot meet their burden of showing that these documents would be admissible at trial. *See Brown*, 1995 WL 387698, at *9. Defendants' requests are also far too broad, because they improperly seek much of DFS's investigative file. *United States v. Chen De Yian*, No. 94-CR-719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) (Cote, J.) (quashing Rule 17(c) subpoena because "it called for the production of the entire investigative file and is accurately described as a fishing expedition"); *see also United States v. Sessa*, No. 92-CR-351 (ARR), 2011 WL 256330, at *53 (E.D.N.Y. Jan. 25, 2011) ("Courts within this Circuit have held that a Rule 17(c) subpoena may not be used to obtain reports and investigative files from local law enforcement agencies in advance of trial . . . because such evidence is generally inadmissible at trial."), *aff'd*, 711 F.3d 316 (2d Cir. 2013).

Defendants contend that their request is sufficiently specific because these documents have already been produced to DFS, making it easy and inexpensive for the PRI Parties to locate and produce them to Defendants. (Defs.' Opp'n, at 8, 27.) The fact that compliance with a subpoena is easy, however, does not make it sufficiently specific. Subpoena requests must be

6

focused on finding particular documents that are relevant and admissible. Although Defendants have identified a group of documents that may be easy for the PRI Parties to produce, Defendants' request is improper because investigative files often contain many documents that are inadmissible on hearsay or other grounds. *See, e.g., United States v. Boyle*, No. 08 CR 523 (CM), 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) (McMahon, J.) (quashing subpoena for investigative file as overbroad because although part of the investigative file "may be relevant to the case at bar," the "the bulk of materials sought by defendant would be inadmissible").

In an explanatory parenthetical, Defendants suggest that another court found a "subpoena was 'sufficiently specified' because the recipient could 'easily' locate the evidence." (Defs.' Opp'n, at 27 (quoting *United States v. Holihan*, 248 F. Supp. 2d 179, 188 (W.D.N.Y. 2003).) This suggestion is misleading. Although *Holihan* did note that the documents at issue would be easy to locate, the court nonetheless modified the subpoena because it was "overbroad." *Holihan*, 428 F. Supp. at 188. If anything, *Holihan* undermines Defendants' position by showing that even if a subpoena will result in the production of relevant, admissible, and easily identifiable documents, it is still objectionable if the requests are broader than necessary to accomplish that purpose. *See id.*

Quoting another decision, Defendants claim that a subpoena request is "sufficiently specific" if it "identifies 'a group of records likely to contain helpful documents.'" (Defs.' PRI Opp'n, at 27 (quoting *United States v. Weisberg*, No. 08-CR-347 (NGG) (RML), 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011).) The subpoena requests in *Weisberg*, however, were much more specific than the requests at issue here. The defendant there sought, *inter alia*, billing records, time entries, invoices, and related records drafted by specific people, for work performed by specific individuals, and as limited by a specific time period. *Id.*, at *6. The specificity of these requests allowed that court to determine that those documents would be

7

relevant to the defense and would likely be admissible as business records. *Id.*, at *7. Here, by contrast, even if some of the documents Defendants are requesting may be relevant, the request is not specific enough to permit this Court to assess admissibility. Indeed, Defendants' request is more like the subpoena request in *Weisberg* that the court *did* quash. That subpoena request—for all documents related to the escrow account from which the defendant was accused of stealing—was quashed because it was "insufficiently focused on documents that will be relevant to" the defense. *See id.*, at *1–2, 6. Similarly, Defendants' request here for *all* documents produced as part of a state agency's investigation into a non-party is insufficiently focused.

The other decisions on which Defendants rely are similarly distinguishable because the requests in those cases were far more specific than the request at issue here. (*See* Defs.' PRI Opp'n, at 27 (citing *United States v. Yudung Zhu*, No. 13 CR. 761, 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014) (Marrero, J.); *United States v. Rajaratnam*, 753 F. Supp. 2d 317 (S.D.N.Y. 2011) (Holwell, J.); and *United States v. McClure*, No. CRIM.A. 10-028, 2010 WL 3523030 (E.D. La. Sept. 1, 2010)).) The subpoenas found permissible in *Yudung Zhu*, in particular, sought a "retrospective review" mandated by law, a response to that review from a government agency, memoranda from a particular interview, and communications between two particular individuals on a particular topic. 2014 WL 5366107, at *2–6. The subpoenas in *Rajaratnam* and *McClure* were similarly specific, including requests for communications between specifically identified individuals, requests for particular tax returns, and requests for records of complaints against a particular police officer. 753 F. Supp. 2d at 322–33; 2010 WL 3523030, at *1. Each of these requests sought what the *Yudong Zhu* decision referred to as "a specific type of document." 2014 WL 5366107, at *6. By contrast, Defendants are not requesting documents of "a specific type," but instead any and all documents produced to DFS, regardless of subject matter and regardless of whether they are financial records, phone records, invoices, insurance policies,

8

emails, text messages, letters, or otherwise.

Accordingly, with respect to Request 1, the PRI Parties' and Government's motions to quash are GRANTED.

### 2. Request 2

Defendants demand "transcripts of the depositions conducted by DFS, including the exhibits to those depositions." (Defs.' PRI Opp'n, at 8.) Defendants have not explained how these deposition transcripts—which consist entirely of out-of-court statements—could be admissible at trial. For this reason, they are not appropriate requests under Rule 17(c). *See United States v. Boyle*, No. 08 CR 523 (CM), 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) (McMahon, J.) (quashing requests for "witness statements" and "audio recordings" because those materials would "be inadmissible at defendant's trial on hearsay grounds"); *United States v. Jackson*, No. 02 CR. 756 (LMM), 2006 WL 1993251, at *2 (S.D.N.Y. July 14, 2006) (McKenna, J.) ("The defendant has not shown how the subpoenaed telephone records, of their nature hearsay, could be admissible, as required by *Nixon*."); *Brown*, 1995 WL 387698, at *10 (quashing subpoena for memoranda of interviews because they would "be hearsay, and inadmissible as evidence at trial"); *Cherry*, 876 F. Supp. at 552 (quashing requests for "statements made by eyewitnesses" because documents containing those statements are "inadmissible hearsay" and could not themselves "be introduced as evidence at trial").

Furthermore, Defendants cannot meet their burden of showing why the bulk of these transcripts would be relevant, given that Defendants do not identify any of these deponents other than Anthony Bonomo. With respect to the transcripts of Bonomo's testimony, Defendants contend that because they "know that Bonomo will testify" at trial, they should be permitted to obtain his transcripts for impeachment purposes. (Defs.' PRI Opp'n, at 25.) The Government has represented, however, that it will produce these deposition transcripts. (DFS Mem., at 11;

9

Gov't Reply, ECF No. 280, at 7.) For this reason, Rule 17(c) is not the proper method for obtaining these materials; they should instead be disclosed by the Government in accordance with its obligations under 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83 (1963); and *Giglio v. United States*, 405 U.S. 150 (1972). *See Nixon*, 418 U.S. at 699 (requiring party seeking documents pursuant to a Rule 17 subpoena to show that those documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence").

Accordingly, with respect to Request 2, the PRI Parties' and Government's motions to quash are GRANTED.

### 3. Request 3

Defendants request "the DFS 'interrogatories' and the answers provided." (Defs.' PRI Opp'n, at 8.) Like the Defendants' request for all "documents produced to DFS," this request lacks specificity. Defendants do not know the scope of the interrogatories DFS posed or the answers the PRI Parties provided. And like Defendants' request for deposition transcripts, even if some of the answers to DFS's interrogatories may be relevant, they are hearsay, and hence their production is not appropriate pursuant to Rule 17(c). *See, e.g., Boyle*, 2009 WL 484436, at *2.

Accordingly, with respect to Request 3, the PRI Parties' and the Government's motions to quash are GRANTED.

### 4. Request 4

Defendants request all "communications between DFS and the government." (Defs.' PRI Opp'n, at 8.) It is unclear how these documents would be admissible at trial. Because DFS is not a party to this case, any statements by DFS are hearsay. Although the Government is a party to this case, out-of-court statements by Government agents are generally not admissible as party admissions under Federal Rule of Evidence 801(d)(2). *See United States v. Ford*, 435 F.3d

10

204, 215 (2d Cir. 2006) (excluding statement of Assistant United States Attorney on hearsay grounds and noting that, for such statements to be admitted, they must be "the equivalent of testimonial statements") (citation and internal quotation marks omitted); *United States v. Yildiz*, 355 F.3d 80, 82 (2d Cir. 2004) (excluding out-of-court statements of government informant because they were not "sworn statements submitted to a judicial officer"); *United States v. Forbes*, No. 3:02-CR-264 (AHN), 2007 WL 141952, at *8 (D. Conn. Jan. 17, 2007) (excluding on hearsay grounds "unsworn, out-of-court statements of government attorneys contained in letters written by prosecutors").

Accordingly, with respect to Request 4, the PRI Parties' and Government's motions to quash are GRANTED.

### B. Subpoenas Served on Glenwood Parties

The Glenwood Parties and the Government have moved to quash subpoenas served on the Glenwood Parties. (ECF Nos. 276, 278, 289, 291.) These subpoenas contain sixteen requests. (*See* Gov't Glenwood Mot.,[4] Exs. A–C.) The parties agree that four of these requests— Requests to Swarzman 1, 2, 4, and 5—are moot. (ECF No. 313, at 2.) For this reason, the Court will rule on only Defendants' other twelve requests.

#### 1. Requests to Dorego 1, 2, 3 & 5; Request to Glenwood 1

Requests to Dorego 1, 2, 3, and 5 and Request to Glenwood 1 concern payments that non-party Dorego may have received from other non-parties. (*See* Gov't Glenwood Mot., Ex. A, at 5, Ex. B, at 5.) Defendants contend that these documents may show that Dorego—Glenwood's general counsel and one of the Government's key witnesses—received illegal kickbacks from

---

[4] "Gov't Glenwood Mot." refers to the Government's letter motion to quash, dated March 29, 2018, ECF No. 276.

11

Swarzman or others. In particular, although Dorego testified at the last trial that he received money from Swarzman only for "some legal fees," Defendants point out that Government notes taken during a conversation between Swarzman and the Government state, "Charlie D[o]rego got money from title business – got from each deal." (Trial Tr., at 700; ECF No. 301, Ex. B.) These notes further state, "Hundreds of thousands of dollars paid to Charlie D[o]rego out of these projects from Steven Swarzman," and so provide a basis for Defendants' claim that Dorego received kickbacks from Swarzman. (ECF No. 301, Ex. B.)

Evidence concerning this potential kickback scheme is relevant and admissible to show Dorego's motive to cooperate with the Government. *See, e.g., Carollo*, 2012 WL 1195194, at *2 (denying in part motion to quash subpoena for evidence that "may suggest bias or motive . . . to cooperate with the government"). Although these subpoena requests also meet the specificity requirement of *Nixon* (because they are for specific categories of documents concerning or reflecting payments to Dorego from specifically identified individuals), they will not be admissible until after Dorego testifies. *See Seabrook*, 2017 WL 4838311, at *2. Dorego, however, was a key witness at the first trial—testifying for three days—and the Government has not denied that he will testify at the upcoming trial. It is likely, then, that the documents Defendants are requesting will become admissible evidence. Although the Court could wait until Dorego testifies to require production of these documents, doing so would risk delaying trial. To mitigate the risk of any such a delay, Dorego and Glenwood are ordered to produce these documents to the Court, for *in camera* review, on or before June 13, 2018. If Dorego testifies, the Court will release any relevant and admissible documents to Defendants and the Government after his testimony.

Accordingly, the Glenwood Parties' and the Government's motions to quash Requests to Dorego 1, 2, 3, and 5, and Request to Glenwood 1, are DENIED.

## 2. Request to Dorego 4

Request to Dorego 4 is for all "documents and communications concerning your purchase of Cleanwater from Steven Swarzman including any consideration paid for this purchase." (Gov't Glenwood Mot., Ex. A, at 5.) At the first trial, Dorego testified that Clean Water Solutions (defined in Defendants' request as "Cleanwater") was a distributor for AbTech and was owned by Swarzman. (Trial Tr., at 469.) In 2009, Dorego purchased Clean Water Solutions from Swarzman. (Trial Tr., at 470.) Defendants contend that "if the past dealings between Dorego and Swarzman are any guide, the 'sale' may well have been a sham transaction in which Dorego paid no consideration, and Swarzman claimed fake losses in order to reap the tax benefits." (Defs.' Glenwood Opp'n,[5] at 5.) Defendants' only basis for making this argument appears to be Government notes from a conversation Swarzman had with the Government: "Sold CWS because of losses and time → Charlie [Dorego] said it would be good vehicle to write off losses." These notes do not show, however, that the sale of Clean Water Solutions was a sham or otherwise was illegal. Without a further factual basis for this request, Defendants' request appears to be the very sort of "fishing expedition" prohibited by *Nixon*. *United States v. Barnes*, 560 F. App'x 36, 40 (2d Cir. 2014) (summary order) (affirming order quashing subpoena because moving party "proferr[ed] only speculation").

Accordingly, Request to Dorego 4 is QUASHED.

## 3. Request to Dorego 6 & Request to Glenwood 3

Request to Dorego 6 and Request to Glenwood 3 demand documents and communications concerning contact with Glenn Rink, Thomas Dwyer, Christopher McKenna,

---

[5] "Defs.' Glenwood Opp'n" refers to "Memorandum of Law in Opposition to Motions to Quash Subpoenas Served on Glenwood Management, Charles Dorego, and Steven Swarzman," ECF No. 300.

13

and/or Steven Swarzman "regarding Dean Skelos or Adam Skelos." (Gov't Glenwood Mot., Ex. A, at 5, Ex. B, at 5.) Many of these communications have already been produced to the Government. (ECF No. 313.) To the extent that there are responsive documents that have not been produced to the Government, those documents should be produced, as discussed below.

Documents concerning contact with Dorego, Dwyer, McKenna, and Swarzman, are relevant because the Government contends that Defendants illegally pressured Dorego into obtaining for Adam Skelos work selling title insurance, or "title work," from these individuals. (Defs.' Glenwood Opp'n, at 2–3.) Whether Adam Skelos received this "title work" because Defendants pressured Dorego (or instead for some other reason) is central to the defense. Communications between Dorego and these individuals are therefore relevant and admissible to establish, among other things, Dorego's state of mind when making these requests. Defendants' requests are also sufficiently specific in that they are limited to communications to particular individuals on a particular subject matter.

Documents concerning contact with Glenn Rink[6] are relevant because Glenn Rink is the founder of AbTech, the company that gave Adam Skelos a job after allegedly receiving pressure from Defendants. (Defs.' Glenwood Opp'n, at 3.) They are admissible to show Dorego's and Rink's states of mind and reasons for hiring Adam Skelos. The request meets the specificity requirement of *Nixon* in that it specifies communications with a particular person on a particular subject matter.

Accordingly, the motions to quash Request to Dorego 6 and Request to Glenwood 3 are DENIED. On or before June 13, 2018, Dorego and Glenwood shall produce to Defendants and

---

[6] The request for documents concerning contact with Glenn Rink, in particular, is contained in only Request to Dorego 6 (and not in Request to Glenwood 3).

14

the Government any documents responsive to these requests that they have not previously produced to the Government.

### 4. Request to Dorego 7 & Request to Glenwood 4

Request to Dorego 7 and Request to Glenwood 4 demand documents concerning any ownership interest of Dorego, Glenwood, or Leonard Litwin in AbTech. Specifically, Request to Dorego 7 is for "documents and communications concerning any ownership interest you [Dorego] had or have in AbTech including the purchase or sale of such ownership"; and Request to Glenwood 4 is for "documents and communications concerning any ownership interest Glenwood and/or Litwin had or have in Abtech." Defendants contend that these documents are relevant to show an alternative reason why Dorego would have wanted AbTech to hire Adam Skelos. (Defs.' Glenwood Opp'n, at 18.) In particular, Defendants claim that if there are documents showing that these individuals had an ownership interest in AbTech, those documents would support the defense that Adam Skelos was hired on the merits rather than at the behest of the Defendants. (*Id.*) Indeed, if such documents exist, they could undermine Dorego's trial testimony. In particular, at the first trial, Dorego testified that he helped Adam Skelos obtain employment at AbTech—and not Glenwood—because Dorego felt uncomfortable and wanted to distance Glenwood from any favors given to Adam Skelos. (*See, e.g.*, Trial Tr., at 466–67.) Documents showing that Dorego or Glenwood owns AbTech, then, would cut against Dorego's explanation for why he wanted to help Adam Skelos obtain employment there. Defendants could rely on these documents to argue, for example, that if Dorego truly wanted to distance himself and Glenwood from Adam Skelos, he would not have obtained employment for Adam Skelos at a company owned by Glenwood. For this reason, these documents may be relevant and admissible.

Although Request to Dorego 7 and Request to Glenwood 4 are fairly specific, they are

15

broader than necessary. Defendants do not need all documents related to the ownership interest these individuals may have had in AbTech, but instead only documents that *show* any such interest these individuals had during the relevant time period. Dorego Request 7 is therefore modified to read, "documents and communications that show any ownership interest you had in AbTech between 2010 and 2015, including the purchase or sale of such ownership." Glenwood Request 4 is modified to read, "documents and communications that show any ownership interest Glenwood and/or Litwin had in Abtech between 2010 and 2015."

Accordingly, the Glenwood Parties' and the Government's motion to quash Request to Dorego 7 and Request to Glenwood 4 are DENIED. Dorego and Glenwood shall produce documents responsive to the modified requests to Defendants and the Government on or before June 13, 2018.

### 5. Request to Glenwood 2

Request to Glenwood 2 is for "documents and communications concerning any contributions (political or otherwise) funded by Glenwood but made in the name of another person or entity including but not limited to contributions made to the Pledge 2 Project through the law firm of Marquart & Small LLP." (Gov't Glenwood Mot., Ex. B, at 5.) Defendants claim that the purpose of this request is to obtain documents showing illegal "straw donations" by Glenwood that Defendants desire to use during "cross-examination" and for "impeachment." (Defs.' Glenwood Opp'n, at 19.) Because Glenwood is a corporation, the witness Defendants presumably wish to impeach using these documents is Dorego, Glenwood's general counsel. Defendants have not, however, provided a sufficient basis for concluding that Glenwood violated campaign finance regulations or otherwise did anything dishonest. Nor have they provided reason to believe Dorego was aware of any such conduct. For this reason, Defendants have not met their burden of showing that Glenwood likely possesses admissible evidence of any such

16

conduct. Their request, instead, is for a "fishing expedition" prohibited by *Nixon*.

Accordingly, because Defendants have not met their burden of showing that these documents would be admissible at trial, Request to Glenwood 2 is QUASHED.

### 6. Request to Swarzman 3

Request to Swarzman 3 is for "[t]he documents and communications concerning transactions with Charles Dorego, Christopher McKenna, Thomas Dwyer, American Land Abstract or American Land Services other than those provided in response to requests one or two above." Requests to Swarzman 1 and 2—the "requests one or two" referenced in Request to Swarzman 3—are respectively for documents and communications concerning certain payments to Dorego and for documents concerning the sale of Clean Water Solutions to Dorego. Request to Swarzman 3 therefore requests documents concerning transactions with Swarzman, Dorego, McKenna, Dwyer, American Land Abstract, and American Land Services, *other* than transactions where Swarzman made certain payments to Dorego and other than Swarzman's sale of Clean Water Solutions to Dorego. Because these documents are not focused on Dorego's alleged kickback scheme, it is unclear what relevance, if any, they would have to this case. Request to Swarzman 3 is also far too broad, seeking all documents and communications concerning transactions between individuals who frequently did business with each other. (*See* Trial Tr., at 348 (testimony that American Land Abstract was Swarzman's company), 590 (testimony that Dwyer and Swarzman had a "joint venture"), 610–11 (testimony that Dwyer and McKenna are business partners), 850 (testimony that McKenna was the owner of American Land Services).) Defendants' request, therefore, is not sufficiently focused on finding relevant and admissible documents.

Accordingly, Request to Swarzman 3 is QUASHED.

17

## C. Future Subpoenas

The Government requests that it be put on notice of any future subpoenas. (Gov't Glenwood Mot., at 5–6.) Defendants object to that request. (Defs.' Glenwood Opp'n, at 19–22.) Many courts have permitted parties to submit Rule 17(c) subpoena requests *ex parte* where a reason existed for doing so. *See, e.g., United States v. Wey*, 252 F. Supp. 3d 237, 254 (S.D.N.Y. 2017) (Nathan, J.) (noting that sufficiency of subpoenas was "determined in *ex parte* proceedings"); *United States v. Earls*, No. 03 CR. 0364 (NRB), 2004 WL 350725, at *6 (S.D.N.Y. Feb. 25, 2004) (Buchwald, J.) (denying request to permit defendant to serve Rule 17(c) subpoenas without prior approval, because defendant "may apply for Rule 17(c) subpoenas on an *ex parte* basis"); *United States v. Florack*, 838 F. Supp. 77, 79 (W.D.N.Y. 1993) (holding that Rule 17 subpoenas may be served *ex parte* to avoid disclosing trial strategy). For this reason, the Court will not require Defendants to provide notice to the Government of all future subpoena requests, including those they would seek to make *ex parte*. The Court will, however, modify the procedure that Defendants have previously used to obtain subpoenas in this case. As Defendants noted in their opposition papers, Defendants previously acted at the direction of Chambers to have subpoenas signed by the Clerk of Court. (Defs.' Glenwood Opp'n at 20.) In the future, however, the parties shall provide subpoena requests to Chambers for signature. The Court is modifying its prior procedure only because trial is now set to start next month. The modified procedure will allow the Court to resolve any issues with subpoena requests more quickly, reducing any chance that trial will be delayed. To further reduce the risk that trial will be delayed, unless a party has a compelling reason for proceeding *ex parte* with a subpoena request, that party shall give notice of any subpoena request to all other parties.

The Government also requests that any documents Defendants obtain under Rule 17 be made available to the Government. (Gov't Glenwood Reply, ECF No. 305, at 7.) The language

of Rule 17 states that "the court may permit the *parties*" to inspect the production, and Defendants have provided no compelling reason why the Court should prevent the Government from receiving a copy of any third-party document productions. For this reason, the Court has ordered Dorego and Glenwood to produce responsive documents to both Defendants and the Government. Unless a compelling reason requires otherwise, documents produced under any future Rule 17 subpoenas must be provided to counsel for all parties.

## III. CONCLUSION

For the foregoing reasons, the PRI Parties' and Government's motions to quash the subpoenas served on DFS, AFP, PRI, Anthony Bonomo, and Carl Bonomo, are GRANTED. The subpoenas Defendants served on those parties are QUASHED.

The Glenwood Parties' and the Government's motions to quash the subpoenas served on Dorego, Glenwood, and Swarzman are partially GRANTED and partially DENIED: (1) Requests to Dorego 1, 2, 3, and 5, as well as Request to Glenwood 1, are NOT QUASHED, and Dorego and Glenwood shall produce responsive documents to the Court on or before June 13, 2018; (2) Request to Dorego 4 is QUASHED; (3) Request to Dorego 6 and Request to Glenwood 3 are NOT QUASHED, and on or before June 13, 2018, Dorego and Glenwood shall produce to Defendants and the Government any documents responsive to these requests that they have not previously produced to the Government; (4) Request to Dorego 7 and Request to Glenwood 4 are NOT QUASHED, but are modified as discussed above, and Dorego and Glenwood shall produce responsive documents to Defendants and the Government on or before June 13, 2018; (5) Request to Glenwood 2 is QUASHED; (6) Request to Swarzman 3 is QUASHED. The parties are ordered to submit any future 17(c) subpoenas to Chambers, with notice to the other parties unless a compelling reason exists for proceeding *ex parte*.

The Clerk of Court is directed to terminate the motions at ECF Nos. 258, 264, 268, 269,

19

276, 278, 289, and 291.

SO ORDERED.

Dated: New York, New York
May 17, 2018

*/s/ Kimba M. Wood*
KIMBA M. WOOD
United States District Judge