

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 31, 2020

**By ECF**

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States v. Dean Skelos*, S1 15 Cr. 317 (KMW)

Dear Judge Wood:

  The Government respectfully submits this letter in opposition to Dean Skelos's emergency motion, in which he seeks a "modification" of his sentence whereby, in light of the COVID-19 pandemic, he would be released to home confinement for the well over two years that remain on his 51-month sentence of imprisonment. As Skelos concedes, he has failed to exhaust his administrative remedies, as is required under 18 U.S.C. § 3582(c)(1)(A), because he apparently filed his request for relief with the Bureau of Prisons ("BOP") on March 26, 2020 – one day before he filed this motion.[1] This Court should therefore deny the motion, without prejudice to a future motion if his application for relief is denied by the BOP.

  The district court may modify a term of imprisonment previously imposed if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). But it only may do so upon a motion of the BOP or of the defendant, in the latter case provided that "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *Id.* Several courts of appeals have held that the requirements of Section 3582(c) constitute a jurisdictional bar preventing a district court from granting relief unless satisfied. *See United States v. Monzon*, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (collecting cases). And while the Second Circuit has not decided whether this is a jurisdictional bar, it has made clear that as a general matter courts are "required to strictly enforce statutory exhaustion requirements." *Theodoropoulous v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004). This Court therefore "cannot grant [the] motion for sentence reduction" at this time. *Monzon*, 2020 WL 5500220, at *2.

  Skelos cites no authority permitting waiver of the exhaustion requirement under Section 3582(c). Instead, he relies on a case in the context of the Prison Litigation Reform Act (PLRA). *See* Letter at 11 (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). But that case,

---

[1] Skelos has not included a copy of this request in his submission.

Hon. Kimba M. Wood
March 31, 2020

which pertains to a different statute, has since been overruled. *See Medina v. Napoli*, 725 F. App'x 51, n.1 (2d Cir. 2018) (recognizing that *Hemphill* was abrogated by *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016)). After *Ross*, the only recognized exception to the exhaustion requirement under the PLRA is where the administrative remedy is simply "unavailable." *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016); *see also id.* at 123-24 (describing three situations in which administrative remedies might be deemed unavailable under the PLRA, none of which would apply here). Thus, even under the framework applicable to the PLRA, which of course is not applicable, there would be no basis for the Court to overlook Skelos's failure to exhaust administrative remedies since he makes no argument that such remedies are unavailable to him.

To the contrary, Skelos is free to (and apparently has) petitioned the BOP for the relief he seeks. Requiring Skelos to exhaust his administrative remedies is particularly appropriate in this context, because the BOP is uniquely positioned to assess his suitability for such relief. Only the BOP, for example, can provide the Court with detailed information on Skelos's present health condition,[2] his behavior since being incarcerated, his recidivism score, and the relative risks in Otisville as opposed to his desired place of release. On the latter point, it bears noting that while Skelos does not specify his desired place of release, his primary residence is in New York State, which, as noted in his submission, is currently the global epicenter of the coronavirus.

To be sure, the COVID-19 pandemic warrants serious attention. But Skelos has offered no evidence to suggest the BOP is not taking the pandemic seriously, and, to the contrary, the BOP has made significant efforts to respond. In particular, since at least October 2012, BOP has had a Pandemic Influenza Plan in place. *See* BOP Health Management Resources, available at https://www.bop.gov/resources/health_care_mngmt.jsp. Moreover, beginning approximately two months ago, in January 2020, BOP began to plan specifically for coronavirus/COVID-19 to ensure the health and safety of inmates and BOP personnel. *See* Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid- 19.jsp. As part of its Phase One response to coronavirus/COVID-19, BOP began to study "where the infection was occurring and best practices to mitigate transmission." *Id.* In addition, BOP stood up "an agency task force" to study and coordinate its response to coronavirus/COVID-19, including using "subject-matter experts both internal and external to the agency including guidance and directives from the [World Health Organization (WHO)], the [Centers for Disease Control and Prevention (CDC)], the Office of Personnel Management (OPM), the Department of Justice (DOJ) and the Office of the Vice President. BOP's planning is structured using the Incident Command System (ICS) framework." *Id.* On Friday, March 13, 2020, BOP, after coordination with DOJ and the White House, implemented its Phase Two response "in order to mitigate the spread of COVID-19, acknowledging the United States will have more confirmed cases in the coming weeks and also noting that the population density of prisons creates a risk of infection and transmission for inmates and staff." *Id.* BOP's national measures are intended to "ensure the continued effective operations of the federal prison system and to ensure that staff remain healthy and available for duty." *Id.* For example, BOP (a) suspended social visits for 30 days (but increased inmates access to

---

[2] Skelos's submission is supported by a report from a medical consultant with the Justice Advocacy Group, who does not appear to have examined Skelos, but rather reviewed the PSR, which is dated September 13, 2018.

Hon. Kimba M. Wood
March 31, 2020

telephone calls); (b) suspended legal visits for 30 days (with case-by-case accommodations); (c) suspended inmate movement for 30 days (with case-by-case exceptions, including for medical treatment); (d) suspended official staff travel for 30 days; (e) suspended staff training for 30 days; (f) restricted contractor access to BOP facilities to only those performing essential services, such as medical treatment; (g) suspended volunteer visits for 30 days; (h) suspended tours for 30 days; and (i) generally "implement[ed] nationwide modified operations to maximize social distancing and limit group gatherings in [its] facilities." *Id.* In addition, BOP has implemented screening protocols for both BOP staff and inmates, with staff being subject to "enhanced screening" and inmates being subject to screening managed by its infectious disease management programs. *Id.* As part of BOP's inmate screening process, (i) "[a]ll newly-arriving BOP inmates are being screened for COVID-19 exposure risk factors and symptoms"; (ii) "[a]symptomatic inmates with exposure risk factors are quarantined; and (iii) "[s]ymptomatic inmates with exposure risk factors are isolated and tested for COVID-19 per local health authority protocols." *Id.* Skelos has offered no evidence as to why these measures are insufficient.

Moreover, Skelos is far from the only inmate seeking similar relief, and the BOP is uniquely suited to evaluate, at least in the first instance, the relative merit of Skelos's application as compared to the numerous other prisoners making similar ones. While Skelos attempts to argue that he is uniquely situated (Letter at 9), the fact remains that there are hundreds if not thousands of inmates over the age of 70 who, like Skelos, have committed very serious crimes and are serving well-deserved sentences of incarceration. Permitting Skelos to forego the BOP process will assuredly lead to a flood of similar applications, which will in turn lead to inconsistent outcomes, where petitions by similarly situated inmates are adjudicated by different judges without the benefit of the BOP's initial assessment of relative merit.

In sum, even if the Court had jurisdiction to grant the requested relief at this time, it would be inappropriate for this Court to circumvent the review process currently underway at the BOP. In the event Skelos's petition is denied by the BOP, he may renew his motion, at which time the Government will be prepared to respond on the merits, a response that will be informed by additional information gathered and considered by the BOP through its review.[3]

                          Respectfully submitted,

                          AUDREY STRAUSS
                          Attorney for the United States,
                          Acting Under Authority Conferred by 28 U.S.C. § 515

By: /s_____
     Edward B. Diskant / Thomas McKay /
     Douglas S. Zolkind
     Assistant United States Attorneys
     (212) 637-2268

---

[3] In the event the Court is inclined to disregard the administrative exhaustion requirement, the Government requests an opportunity to respond on the merits and oral argument, if necessary.