

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 2, 2020

**By ECF**

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Dean Skelos*, S1 15 Cr. 317 (KMW)

Dear Judge Wood:

      The Government respectfully submits this letter in response to the Court's order, dated April 1, 2020, requesting "information comparing the risk of COVID-19 infection at the home/area to which Mr. Skelos would be confined, with the risk of such infection at the Otisville Camp," as well as "the views of Probation and counsel regarding the conditions of confinement, and of Supervised Release, that should be imposed by the Court in the event that Mr. Skelos qualifies for compassionate release." The Government has contacted both representatives of the Bureau of Prisons ("BOP") and the Probation Department in order to gather information responsive to the Court's inquiries, but is awaiting more detail information from the former.[1] The Government would request the opportunity to more fully address the merits of the defendant's Motion as soon as that information is obtained and with the benefit of the views of the BOP.

      In the interim, the Government writes to (1) provide further legal authority for its earlier argument that the Court lacks the authority to grant the requested relief unless and until the defendant exhausts administrative remedies, which he has not yet done; and (2) provide a preliminary overview of why Skelos is unlikely to be entitled to relief on the merits.

      <u>1. Exhaustion of Administrative Remedies is Mandatory</u>

      In his submission, Dean Skelos concedes that he has failed to exhaust his administrative remedies. Because such exhaustion is mandatory, the Court lacks the authority to grant compassionate release at this time.

---

[1] As discussed further below, the Probation Department has informed the Government that it does not believe the defendant to be an appropriate candidate for home confinement, a condition which requires the Probation Department to devote additional resources to his supervision. As such, should the Court grant the Motion, the defendant's term of imprisonment would be completely terminated after having served just a small fraction of his sentence.

Hon. Kimba M. Wood
April 2, 2020

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." *Id.* § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Section 3582(c)(1)(A)'s exhaustion requirement is therefore mandatory. It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, thus not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). By significant contrast, *statutory* exhaustion requirements "stand[] on a different footing." *Id.* There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id.*

As described above, Section 3582(c)(1)(A) contains mandatory exhaustion language with no statutory exceptions. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights." Unlike the Prison Litigation Reform Act, for example, there is no statutory qualifier that a defendant need only exhaust all "available" remedies.[2] Thus, Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims). For this reason, as Judge Cote has explained, this court lacks the authority to grant Skelos's motion at this time. *United States v. Monzon*, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020); *see also United States v. Hernandez*, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020) (finding that the compassionate release provisions of Section 3582(c) did not apply because "Mr. Hernandez does not appear to have sought any [ ] relief within the Bureau of Prisons, let alone exhausted his administrative remedies"); *United States v. Gileno*, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020) (denying 3582(c) claim on exhaustion grounds, despite claim of fear of exposure to COVID-19); *United States v. Mirliashvili*, No. 14-cr-810 (CM) (S.D.N.Y. Apr. 1, 2020) (denying 3582(c) motion

---

[2] In particular, the PLRA demands that an inmate exhaust "such administrative remedies *as are available*," meaning that the only permissible exception to exhaustion is where the remedies are "unavailable." *Ross,* 136 S. Ct. at 1856-58 (emphasis added); *see also id.* at 1855 (criticizing the "freewheeling approach" adopted by some courts of appeals to exhaustion requirements, and overruling precedent from the Second Circuit and other circuits that had read additional exceptions into the rule). Here, no such exception exists in the statute.

Hon. Kimba M. Wood
April 2, 2020

brought by 71-year-old defendant housed at Otisville because defendant failed to exhaust administrative remedies).

It would be legal error for the Court to disregard that requirement.

2. Skelos Is Unlikely to Be Entitled to Relief on the Merits

The Government will be prepared to make a fulsome submission as to the merits of Skelos's motion for compassionate release when, and if, such motion becomes ripe for review. We submit that the Court should defer any analysis of the merits at this stage, not only because Skelos has failed to exhaust his administrative remedies, but also because the Government does not yet have the information requested from BOP about, *inter alia,* the defendant's present health condition and conditions of confinement, and his relative risks vis-à-vis the many other inmates currently seeking similar relief.  Indeed, BOP is addressing many similar applications from inmates across the country, and is endeavoring to respond promptly, while ensuring that a consistent approach is taken system-wide, taking into account unique circumstances applicable to each individual inmate.

That said, based on the information that is available to the Government, Skelos's assertion that he is "uniquely susceptible to the COVID-19 virus pandemic" (3/27/20 Ltr. at 1) appears to be based almost exclusively on the fact that he is 72 and had prediabetes at the time the presentence investigation report ("PSR") was prepared, more than 18 months ago.  Skelos has doing nothing thus far to meet his burden of establishing that he is uniquely entitled to the drastic relief he seeks. He has provided no medical records attesting to his present medical condition, nor any records as to the nature of his condition prior to his confinement.  He has similarly provided nothing, aside from his attorney's conclusory assertions as to his current conditions of confinement. Indeed, it is telling that Skelos as not even offered to file his own affidavit addressing these issues in connection with the instant Motion.  To grant relief at this stage, on such a bare record, would reduce the required showing to a near nullity.  Indeed, it would suggest that any or all of the thousands of inmates nationwide who are similarly situated, would be entitled to immediate commutation of their sentences for no reason aside from their present age, an outcome plainly inconsistent with the statute.

Moreover, while the Government is awaiting further information from the BOP, it bears noting, in response to the Court's inquiry, that based on the information currently available to the Government, there is only one confirmed case of COVID-19 at Otisville, which has more than 100 inmates in the camp. *See* https://www.bop.gov/coronavirus/index.jsp.  By contrast, as of today there are nearly 100,000 confirmed cases in New York State, and, just this morning, Governor Cuomo reported a "troubling" surge of over 1,000 new cases in Nassau County – the location to which Dean Skelos seeks release – giving that County more than 10,000 confirmed cases. *See* https://www.nytimes.com/2020/04/02/nyregion/coronavirus-new-york-update.html.

It would be particularly striking to grant the extraordinary relief Skelos requests—at this stage, and on this record—given the nature of his offense and the extent to which he has served his sentence to date, factors the Court is of course compelled to consider in evaluating a Section

Hon. Kimba M. Wood
April 2, 2020

3582(c) application. *See United States v. Ebbers*, No. S4 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020) ("[T]he existence *vel non* of 'extraordinary and compelling reasons' determines only whether a defendant can be considered for release—the existence of such reasons does not mandate release."); *United States v. Israel*, No. 05 CR 1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition. . . . [Section 3582] was drafted using the word 'may,' not 'must.'").

As this Court remarked at sentencing:

> Through your crimes you caused immeasurable damage to the New York citizens' confidence in the integrity of their government. As senate majority leader, you had a unique position of power and trust . . . . Use of your power to commit crimes has been exposed by your own words in recordings played at trial of the many wiretapped conversations. What makes your crimes particularly serious is that you corrupted major governmental processes, the state budget process, laws affecting tax revenues, rent regulations affecting millions of people, as well as laws affecting insurance needed by doctors in this state to treat people. . . . The most common federal sentence for New York State legislators who have abused their positions to commit crimes is about 70 percent of the low end of each one's sentencing guideline range. Your crimes were more egregious than most . . . .

(10/25/18 Sentencing Tr. at 28-29.) In light of those factors and others, the Court sentenced Skelos to a substantial sentence of 51 months' imprisonment. To date, Skelos has served only approximately 15 months, or less than 30% of his full sentence. He seeks to be released to his home for the remaining term of imprisonment because of a pandemic that – while undoubtedly serious – presents a hypothetical risk of infection, one which the BOP is taking substantial steps to address and one which, in all likelihood, will have abated well in advance of his projected released date. Such an outcome would almost certainly result in an unprecedented windfall for a defendant who committed serious crimes, where there is a substantial public interest in ensuring that he is being held fully accountable for his conduct. Indeed, it would be particularly disturbing to create the appearance that this defendant, of all defendants, had received special treatment, including a waiver of the requirement applicable to all other inmates that he comply with the statute's mandatory administrative exhaustion procedures before seeking judicial relief. Such an outcome would not only be contrary to the statute but contrary to the critical factors, including the serious nature of the offense, the violation of public trust, and the need for general deterrence, that led the Court to impose a 51-month sentence of incarceration in the first place.

While Skelos attempts to portray the request for a modification to home confinement and somewhat limited in scope, it is anything but. Having conferred with the Probation Department, the Government understands that Probation is of the view that, if Skelos were released, a condition

Hon. Kimba M. Wood
April 2, 2020

of home confinement would not be necessary. This Court lacks the authority to order the BOP to place Skelos in home confinement and supervise him accordingly. *See United States v. Urso*, 2019 WL 5423431, at *1 (E.D.N.Y. Oct. 23, 2019) (while Section 3582(c) "authorizes the court to modify a <u>term</u> of imprisonment, it does not authorize the court to alter the method of incarceration"). And thus given Probation's view that it would not be a necessary condition of supervised release, Skelos is unlikely to actually be required to serve home confinement. His request therefore amounts to a complete windfall – more than 70% of his 51-month jail sentence replaced with supervised release with relativity limited supervision.

What is more, the court should take note of what relief Skelos is *not* seeking. At his sentencing, Skelos indicated his intent to seek bail pending appeal; he later decided not to pursue that claim, and surrendered to serve his sentence. That said, nothing is stopping him from renewing his request for bail pending appeal at this point. *See* 18 U.S.C. § 3143(b). Such a request would not be subject to the exhaustion requirement applicable to his instant motion, and thus could be addressed forthwith. If Skelos were successful in a claim for bail pending appeal, he could be released imminently, and remain at home on bail for the duration of the pandemic. And without conceding the merits of a motion that has not yet been made, the Government would not dispute that Skelos would have a far more plausible claim to meet the bail pending appeal standard than he does the compassionate release standard. Indeed, Skelos won bail pending appeal during his first appeal, and Sheldon Silver won bail pending appeal during his latest appeal, which raised similar arguments to Skelos's current appeal. Moreover, bail pending appeal would appear to be more appropriately tailored to the issue Skelos is facing – that is, a need to seek temporary refuge from the risk of contracting COVID-19 at Otisville. To be sure, if such relief were granted, he would ultimately need to serve out the remainder of his sentence – but that could be done once the pandemic passes and if his pending appeal is unsuccessful. But instead of seeking that much more modest relief, Skelos has asked for the far more drastic and extraordinary remedy of compassionate release, which belies any claim that this request is modified solely by the stated health concerns.

<u>Conclusion</u>

For the foregoing reasons, Skelos's motion should be denied because he has failed to comply with the statute's mandatory administrative exhaustion requirements. Moreover, the Government respectfully submits that in no event should the Court grant his motion on this record and without plenary briefing on the merits and argument.

    Respectfully submitted,

    AUDREY STRAUSS
    Attorney for the United States,
    Acting Under Authority Conferred by 28 U.S.C. § 515

By: /s
    Edward B. Diskant / Thomas McKay / Douglas Zolkind
    Assistant United States Attorneys