USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___4/12/20___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA

       v.

DEAN SKELOS,

               Defendant.
-------------------------------------------------------------X

15-CR-317 (KMW)
**OPINION AND ORDER**

KIMBA M. WOOD, District Judge:

    Defendant Dean Skelos has moved to modify his sentence under 18 U.S.C. § 3582 and the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Defendant seeks compassionate release because his age, prediabetic condition, and other disabilities put him at unique risk of dying or suffering severe illness should he contract COVID-19. The Government opposes his motion. For the reasons set forth below, the Court DEFERS ruling on Defendant's motion.

**I.    BACKGROUND**

    On October 25, 2018, this Court sentenced Defendant to 51 months in prison, to be followed by one year of supervised release, as punishment for abusing his office as a New York State Senator in order to enrich his son, Adam Skelos. The imposition of this sentence followed a retrial, after the Second Circuit overturned Defendant's original 2015 conviction. On retrial, as previously, a jury convicted him of eight counts of corruption charges.

    Defendant self-surrendered on January 8, 2019. He is presently housed at the satellite camp at the Federal Correctional Institution in Otisville, New York ("FCI Otisville"). He is scheduled to be released on August 20, 2022.

1

On March 26, 2020, Defendant submitted an application to the Warden of FCI Otisville requesting that the Bureau of Prisons ("BOP") move on his behalf for compassionate release in light of the serious threats to his health posed by COVID-19. According to the Government, the Warden received the application on April 1, 2020. To date, the BOP has not taken any action on Defendant's application.

On March 30, 2020, Defendant moved to modify his sentence under 18 U.S.C. § 3582 and the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). The Government responded to the motion the following day. The Court conducted a telephone conference with the parties on April 3, 2020 and received supplemental submissions from Defendant and the Government on April 6, 2020 and April 7, 2020, respectively.

## II. RISKS FACING DEFENDANT DUE TO COVID-19

Jails and prison are powder kegs for infection. People in jails and prisons cannot practice social distancing, control their exposure to large groups, practice increased hygiene, wear protective clothing, obtain specific products for cleaning and laundry, avoid frequently touched surfaces, or sanitize their own environment. "Realistically, the best—perhaps the only—way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible." *United States v. Nkanga*, No. 18-CR-713, 2020 U.S. Dist. LEXIS 56188, at *1 (S.D.N.Y. Mar. 31, 2020) (Furman, J.).

A handful of examples suffice to illustrate that the COVID-19 virus spreads with uncommon and frightening speed in carceral settings. At the peak of the outbreak in Wuhan, China—where COVID-19 originated—over half of all new infection cases originated in the city's prison system.[1] On Rikers Island, the rate of infection among incarcerated people is over

---

[1] Zi Yang, Cracks in the System: COVID-19 in Chinese Prisons, THE DIPLOMAT (March 9, 2020), *available at* https://thediplomat.com/2020/03/cracks-in-the-system-covid-19-in-chinese-prisons/.

six times the rate of infection in New York City generally.[2]  The Cook County jail in Chicago is the country's largest-known source of coronavirus infections.[3]  At the Elkton federal prison in Ohio, three inmates have died of the disease, 44 have been hospitalized, and 14 are on ventilators.[4]  Within days of COVID-19 arriving at the Oakdale federal prison in Louisiana, the number of cases "exploded"; by March 29, 2020, at the 1,700-person facility, one inmate had died, one guard had been admitted into a hospital's intensive care unit, and another thirty incarcerated people and an unknown number of staff were in quarantine.[5]  Another five days later, five inmates at Oakdale had died.[6]  The death count currently stands at six.[7]

For Defendant, the risks are likely compounded.  In support of his motion for compassionate release, Defendant submits the medical report of Dr. Richard Goldberg, which is based on medical information about Defendant contained in Defendant's presentence report.  The report states that Defendant lives with an immune disorder.  Defendant is prediabetic, and according to research cited in the report, prediabetic individuals respond differently to respiratory infections than do individuals with typical insulin sensitivity.  "[T]hose individuals like Mr. Skelos are at extreme risk should they be infected by the [novel coronavirus]."

---

[2] The rates of infection rely on publicly released data collected by the Legal Aid Society.  *See Analysis of COVID-19 Infection Rate in NYC Jails,* THE LEGAL AID SOCIETY, https://legalaidnyc.org/covid-19-infection-tracking-in-nyc-jails/ (last visited Apr. 10, 2020).

[3] Timothy Williams & Danielle Ivory, *Chicago's Jail is Top U.S. Hot Spot as Virus Spreads Behind Bars*, THE NEW YORK TIMES (April 8, 2020), *available at*: https://www.nytimes.com/2020/04/08/us/coronavirus-cook-county-jail-chicago.html.

[4] Sam Allard, *The Latest out of Elkton Federal Prison, Where Horror Show Continues Apace*, CLEVELAND SCENE (April 10, 2020, 4:18 p.m.), *available at*: https://www.clevescene.com/scene-and-heard/archives/2020/04/10/the-latest-out-of-elkton-federal-prison-where-horror-show-continues-apace.

[5] Kimberly Kindy, *An Explosion of Coronavirus Cases Cripples a Federal Facility*, THE WASHINGTON POST (March 29, 2020), *available at* https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html.

[6] Caroline Habetz, *Fifth Inmate at Oakdale Federal Prison Dies from COVID-19*, KPLC (April 3, 2020, 3:39 p.m.), https://www.kplctv.com/2020/04/03/fifth-inmate-oakdale-federal-prison-dies-covid-/.

[7] Caroline Habetz, *Sixth Inmate at Oakdale Federal Prison Dies from COVID-19*, KPLC (April 10, 2020, 2:45 p.m.), https://www.kplctv.com/2020/04/10/sixth-inmate-oakdale-federal-prison-dies-coronavirus/.

But even if the Court were to disregard this medical report, Defendant's age makes him highly vulnerable. In a February 29, 2020 WHO-China Joint Mission Report, preliminary mortality rate analyses showed that individuals 70-79 years old had an 8% mortality rate.[8] Individuals aged 60-69 had a 3.6% mortality rate; those age 40-49 had a .4% mortality rate; those 40 years and younger had a mortality rate as low as 0.2%.[9] Defendant, at 72 years old, is very vulnerable to infection by COVID-19.

### III.   AUTHORITY TO GRANT RELIEF AT THIS JUNCTURE

Other judges in this district have very ably described the extraordinarily high rates of infection by COVID-19, the particularly high risks to inmates, and the considerations a court should weigh in deciding whether inmates should be required to exhaust administrative processes before a court may grant compassionate release in today's circumstances. *See, e.g.*, *United States v. Roberts*, No. 18-cr-528-5, 2020 U.S. Dist. LEXIS 62318, at *4-5 (S.D.N.Y. Apr. 8, 2020) (Furman, J.); *United States v. Gross*, No. 15-cr-769, 2020 U.S. Dist. LEXIS 60554, at *5-6 (S.D.N.Y. Apr. 6, 2020) (Nathan, J.); *United States v. Russo*, No. 16-cr-441, 2020 U.S. Dist. LEXIS 59223, at *5-7 (S.D.N.Y. Apr. 3, 2020) (Liman, J.). This court will not repeat what has been so well expressed by other judges. Rather, this Opinion will summarize the considerations relevant to Defendant's motion for compassionate release.

A court may modify a term of imprisonment once it has been imposed only pursuant to statute. Until December 2018, no statute authorized courts to alter a duly-imposed sentence on compassionate release grounds unless the Bureau of Prisons (BOP) moved for such relief. 18

---

[8] *Age, Sex, Existing Conditions of COVID-19 Cases and Deaths* Chart, *available at* https://www.worldometers.info/coronavirus/coronavirus-age-sex-demographics/ (data analysis based on WHO-China Joint Mission Report).
[9] *Id.*

4

U.S.C. § 1B1.13. Now, following the passage of the First Step Act, courts may consider motions for compassionate release brought by inmates. 18 U.S.C. § 3582(c)(1)(A).

Courts may grant those motions only if the movant has exhausted administrative processes, among other requirements. A defendant is ineligible to seek compassionate release from a court until he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf *or* thirty days have elapsed since requesting that the warden of his facility initiate such action. *Id.* Here, Defendant asks the Court to waive Section 3582's exhaustion requirement.

The Second Circuit has not spoken on the issue of waiver in this context. "[A]s a general rule, courts are required to strictly enforce statutory exhaustion requirements." *Theodoropoulos v. INS*, 358 F.3d 162, 172 (2d Cir. 2002). Nevertheless, "an exception to the general rule might apply" in "some limited circumstances." *Id.* These circumstances may include where "unusual facts" make "an exception [] necessary to prevent manifest injustice." *Pichardo v. Ashcroft*, 374 F.3d 46, 52–53 (2d Cir. 2004). The Second Circuit considered the exhaustion requirement contained in the Prison Litigation Reform Act, which preceded the First Step Act and has certain analogous administrative requirements, and held that courts may waive a failure to exhaust. In so doing, courts may consider whether administrative processes were "technically available" but "practically speaking, incapable of use." *Williams v. Priatno*, 829 F.3d 118, 126 (2d Cir. 2016) (citation omitted). Some courts have applied similar reasoning to waive Section 3582's exhaustion requirement in light of COVID-19. *See, e.g.*, *United States v. Zukerman*, No. 16-cr-194, 2020 U.S. Dist. LEXIS 59588, at 11* (S.D.N.Y. Apr. 3, 2020) (Torres, J.) (finding that Defendant's "advanced age and compromised health, combined with the high risk of contracting COVID-19 at Otisville, justify waiver of the [Section 3582] exhaustion requirement"); *United*

5

*States v. Perez*, No. 17-cr-513, 2020 U.S. Dist. LEXIS 57265, at *8 (S.D.N.Y. Apr. 1, 2020) (Torres, J.) (waiving Section 3582's exhaustion requirement and finding that "delaying release amounts to denying relief altogether"); *United States v. Colvin*, No. 3:19-cr-179, 2020 U.S. Dist. LEXIS 57962, at *5 (D. Conn. Apr. 2, 2020) (Arterton, J.) (waiving Section 3582's exhaustion requirement for reasons including that, "if Defendant contracts COVID-19 before her appeals are exhausted, that undue delay might cause her to endure" catastrophic health consequences); Amended Order, *United States v. Powell*, No. 1:94-cr-316 (D.D.C. Mar. 28, 2020) (finding administrative exhaustion futile and waiving Section 3582's exhaustion requirement).

However, there is strong reason to doubt that the Court has proper authority to waive Section 3582's exhaustion requirement. The Supreme Court has cautioned courts against "read[ing] futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Where a statute contains an exhaustion requirement, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

What Congress would intend in these circumstances is unknowable. On the one hand, the statute already contains something akin to a futility exception: a court may grant compassionate release after the BOP has considered a defendant's application and declined to bring a motion for release on the defendant's behalf, *or* after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). This fact suggests that the Court should not create its own futility-based exception to the exhaustion process.

On the other hand, it appears from the First Step Act that, by setting a 30-day period for exhaustion, Congress intended to *accelerate* judicial review of whether an inmate is entitled to compassionate release. In ordinary circumstances, a lapse of 30 days before an inmate may seek

6

judicial recourse is "exceptionally quick." *Russo*, 2020 U.S. Dist. LEXIS 59223, at *7. However, today's circumstances are not ordinary. Infection from COVID-19 spreads so quickly, and, for many, carries such lethality, that 30 days can mean the difference between life and death. "Requiring defendants to await the lapse of the *full* 30 days from receipt of their requests by the wardens of their facilities may pervert congressional intent by transforming the 30-day rule into an obstacle—rather than an accelerant—to judicial review, and result in irreparable harm to defendants." *Gross*, 2020 U.S. Dist. LEXIS 60554, at *9 (citations omitted) (emphasis in original).

Thus, in order to effectuate congressional intent, the Court finds it appropriate to strike a compromise. The Court will defer ruling on Defendant's motion until on or after April 15, 2020 in order to afford the BOP the opportunity to consider its merits, and the Court expects the BOP to act with the dispatch the circumstances compel. The Government is hereby ordered to submit a letter immediately following any determination the BOP makes on Defendant's request for compassionate release. The Court expects the BOP to make a final determination no later than April 15, 2020—twenty days from the date on Defendant's application to the BOP and two weeks after the Warden at the Otisville facility received Defendant's application. *See United States v. Resnick*, No. 12-cr-00152-CM, 2020 U.S. Dist. LEXIS 59091, at *16 (S.D.N.Y. Apr. 2, 2020) (McMahon, C.J.) (applying the "prison mailbox rule" to the Section 3582 exhaustion requirement); *Gross*, 2020 U.S. Dist. LEXIS 60554, at *8 (deferring ruling on defendant's motion and requesting a response from the BOP within *one week* of the BOP receiving the defendant's compassionate release application). The BOP is also encouraged to state by April 15, 2020, whether it intends to grant Defendant a furlough under 18 USCS § 3622—a matter committed to the BOP's sole discretion. *See Roberts*, 2020 U.S. Dist. LEXIS 62318, at *10. If

the BOP has not made a final decision on Defendant's compassionate release application or granted Defendant a furlough by April 15, 2020, the Court will consider Defendant's compassionate release motion at that time. This compromise is intended to vindicate congress's dual intent that the BOP be afforded the opportunity to weigh in on the merits of compassionate release applications and that inmates have swift access to judicial review.

The court recognizes that the BOP may well have access to information the Court lacks. For example the BOP may know an inmate's *current* medical condition, the *current* risk of infection by COVID-19 in the quarters in which that person is housed, and the extent to which effective quarantine is available. However, the BOP may not have the resources to obtain that information, when, as now, it must consider the individual circumstances of thousands of compassionate release applicants. If the Government is currently aware, or at any point learns, that the BOP will not be able to render a decision on Defendant's application by April 15, 2020, the Government is urged to waive the requirement of administrative exhaustion in this case. *See United States v. Knox*, No. 15-cr-445, 2020 U.S. Dist. LEXIS 62684, at *2-3 (S.D.N.Y. Apr. 9, 2020) (Engelmayer, J.) (urging the Government to waive exhaustion where the BOP could not commit to resolving Defendant's compassionate release application by the expiration of the 30-day exhaustion period or by any certain date).

The Court notes that its compromise here is intended to effectuate Congress's goal of speedy judicial review as expressed through a statute drafted at a time when the threat of COVID-19 was beyond imagining. The Court "joins the growing chorus of courts imploring the coordinate branches to take action in response to the threat COVID-19 poses to incarcerated people before it is too late." *Gross*, 2020 U.S. Dist. LEXIS 60554, at *8; *see Nkanga*, 2020 U.S. Dist. LEXIS 56188, at *2. The current public health crisis demands a systemic response, rather

than judge-by-judge determinations, which vary depending on which judge is deciding the motion for compassionate release.

## IV.     CONCLUSION

For the foregoing reasons, the Court DEFERS ruling on Defendant's motion. The Government shall submit a letter immediately following any determination by the BOP on Defendant's application for compassionate release. If the BOP has not made a final determination by April 15, 2020, the Court will at that time consider Defendant's motion in full.

SO ORDERED.

Dated: New York, New York
April 12, 2020                                                      /s/ Kimba M. Wood
                                                                        KIMBA M. WOOD
                                                            United States District Judge